Jimmy STRICKLAND *v.* STATE of Arkansas

CA CR 00-1061                                    46 S.W.3d 554

Court of Appeals of Arkansas
Divisions I, II, and IV
Opinion delivered June 13, 2001

*John Joplin*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. This is an appeal from a jury verdict of manslaughter resulting in a sentence of ten years in the Arkansas Department of Correction and a ten thousand dollar fine. Appellant was tried for second-degree murder and convicted of manslaughter upon the jury's finding that he had pushed the victim from a moving vehicle causing her death. Appellant asserts two errors: (1) that the trial court erred in the removal of a juror after the jury had been selected, impaneled and sworn; and (2) the trial court erred in allowing the testimony of a tainted witness. We find no error and affirm.

Appellant first argues that the trial court erred in removing a juror, Mr. Black, after the jury had been selected, impaneled, and sworn. At *voir dire*, the trial judge asked the State to announce the identity of its witnesses. The State called a list of nineteen names, including the name of Detective Mark Hallum from the Fort Smith Police Department. None of the witnesses were present when the names were called. When the court asked the potential jurors if any of them knew the State's witnesses or had dealings with any of the police officers, no one responded. The attorneys for both the State and the defense questioned Mr. Black prior to his being seated.

After the prosecution had presented most of its case, the deputy prosecutor approached the court and informed it that one of the prosecution's witnesses, Detective Hallum from the Fort Smith Police Department, had informed him that he knew one of the jurors, Mr. Black. The court deferred acting on the issue until other witnesses for the prosecution testified.

At the close of the prosecution's case, which included Detective Hallum's testimony, Detective Hallum testified outside the presence of the jury concerning his knowledge of Mr. Black. He stated that, about a year or a year and a half before, he arrested Mr. Black's son, Joshua, a couple of times. One of those times was at Mr. Black's house. When the Detective attempted to arrest Joshua, Mr. Black stated, "You are not going to arrest my son." The Detective replied, "Yes, sir; I am. I am going to take him to jail." The detective testified that it was not a friendly conversation and that it lasted several moments. Although Joshua was ultimately prosecuted on two separate felony charges and Detective Hallum appeared in court with respect to those charges, he did not have any more contact with Mr. Black until he saw him in the jury box in this case.

In light of Detective Hallum's testimony about his confrontation with Mr. Black, the court excused Mr. Black from the jury and replaced him with an alternate juror, Ms. Brown, before the jury began deliberation. The court stated that Mr. Black had an obligation to speak up during *voir dire*, if he knew Detective Hallum and concluded that the defense was not prejudiced by the replacement of Mr. Black.

Appellant maintains that because Ark. Code Ann. § 16-33-303(b) (Repl. 1999) provides that a trial court may permit a challenge for good cause to be made at any time before a jury is completed that there is an implication that the statute forbids a

challenge for cause once a jury is impaneled and sworn. He further contends that Ark. Code Ann. § 16-31-102 sets out the circumstances that allow an alternate to replace a juror and that there was no showing that Mr. Black was disqualified under that statute.

We first note that Ark. Code Ann. § 16-31-102(c) provides that "[n]othing in this section shall limit a court's discretion and obligation to strike jurors for cause for any reason . . . ."

Secondly, appellant's position that the statute forbids a challenge for cause once a jury is impaneled and sworn directly contradicts our case law and would impermissibly limit a judge's obligation to ensure that a defendant receives a trial with an impartial jury. In *Bradley v. State*, 320 Ark. 100, 896 S.W.2d 425 (1995), the trial court replaced a seated juror with an alternate juror. On the third day of trial and after the State had rested, the trial court received a report that the juror was riding to court each day with a spectator and that the spectator's son dated the defendant's mother. The juror had not mentioned this during *voir dire*. The trial court conducted a hearing and, in order to avoid any appearance of impropriety, seated an alternate juror. The Arkansas Supreme Court held that the trial court did not err in excusing the juror and seating the alternate juror in order to avoid an appearance of impropriety. *Id.* (citing *Ruiz v. State*, 273 Ark. 94, 617 S.W.2d 6, *cert. denied*, 454 U.S. 1093, 102 S.Ct.659, 70 L.Ed.2d 631 (1981)).

The Arkansas Supreme Court similarly found no abuse of discretion where a judge removed a seated juror and replaced him with an alternate after accepting the word of a jail trusty over the word of the removed juror. *Lee v. State*, 340 Ark. 504, 11 S.W.3d 553 (2000). The court explained that it "is true that this matter was decided largely as one of credibility, but this court has consistently held that the trial court is in the best position to judge the credibility of the witnesses and to resolve any conflicts in that testimony." *Id.* At 515, 11 S.W.3d at 559-60.

Appellant fails to demonstrate that the trial judge's removal of Mr. Black was an abuse of discretion. The trial judge was faced with a conflict between Mr. Black's silence during voir dire concerning his knowledge of and dealings with a prosecution witness, and the detective's testimony that he had arrested Mr. Black's son in Mr. Black's presence and that there was a confrontation that was unpleasant.

██ The impartiality of a juror is a question of fact for the trial court to determine in its sound discretion. *See Urquhart v. State*, 275 Ark. 486, 631 S.W.2d 304 (1982). The trial court has much latitude and discretion in passing on the qualifications of jurors, and unless abused, its action will not be reversed on appeal. *Franklin v. Griffith Estate*, 11 Ark. App. 124, 666 S.W.2d 723 (1984). The trial court had no duty to determine that Mr. Black had been untruthful in *voir dire* before removing him. *See Arkansas Power & Light Co. v. Bolls*, 48 Ark. App. 23, 888 S.W.2d 319 (1994) (holding that a trial court did not abuse its discretion in granting a new trial although juror's apparently unintentional failure to disclose disqualifying information was not done knowingly); *cf.* Ark. Code Ann. § 16-31-107 (Repl. 1999) (effect of unqualified juror upon verdict or indictment); *see also Bradley v. State*, 320 Ark. 100, 896 S.W.2d 425 (1995) (finding no abuse of discretion to remove juror and replace with alternate to avoid appearance of impropriety).

██ Therefore, we conclude that the trial court did not abuse its discretion in removing Mr. Black from the jury. Furthermore, it has been held that an appellant must show prejudice when the trial court removes a juror and seats an alternate in a juror's place because we will not reverse for harmless error. *Heinze v. State*, 309 Ark. 162, 827 S.W.2d 658 (1992). A litigant is not entitled to the service of a particular juror and the erroneous rejection of a competent juror is not prejudicial, unless it is shown that a biased or incompetent juror replaced the rejected juror. *E.g. Strode v. State*, 259 Ark. 859, 537 S.W.2d 162 (1976). Appellant's failure to demonstrate prejudice would therefore preclude reversal even had the trial court's action in replacing Mr. Black been error.

Appellant's second argument is that he is entitled to reversal because his right to due process was violated when the prosecution allegedly committed misconduct in an attempt to taint witnesses. On January 13, 1999, Carl Strickland, appellant's brother, stated under oath that appellant told him he had pushed the victim from his truck while driving thirty miles per hour. On that same date, appellant's mother made a similar statement. Later, when speaking with appellant's counsel, the Stricklands recanted the statements that they had given.

When the prosecution learned from defense counsel that the Stricklands had changed their stories from what they had previously stated under oath, he subpoenaed them and questioned them again under oath. This time, they said that appellant had not told them

that he pushed the victim from his truck. The prosecutor had them arrested for perjury but did not file charges against them.

Before testifying at trial, the Stricklands testified outside the presence of the jury that they were willing to testify truthfully at trial. At trial, both testified that appellant said the victim jumped from his truck. The prosecution impeached them with their prior inconsistent statements, where they said appellant had told them that he pushed the victim from the truck. The trial judge instructed the jury that they were to consider those statements only for impeachment purposes. Appellant insists that "the situation was fraught with coercion" and that it "is hard to imagine a more oppressive atmosphere under which to call a witness." He urges that this circumstance on its own is enough to shock the conscience and warrant a retrial of the matter. We disagree.

■ The record does not support appellant's claim that the witnesses felt coerced to testify in a manner sought by the prosecution. Both witnesses testified in favor of appellant and in contrast to sworn statements they made soon after the incident. We find no prejudice to the appellant and no abuse of discretion on behalf of the trial judge.

Accordingly, we affirm.

JENNINGS, ROBBINS, BIRD, VAUGHT, and CRABTREE, JJ., agree.

HART, GRIFFEN and NEAL, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. I join Judge Neal's challenge to the majority's decision to affirm in the face of the longstanding legal principle in Arkansas that jurors are presumed to be unbiased unless shown to be biased by the party challenging the juror. See Fleming v. State, 284 Ark. 307, 681 S.W.2d 390 (1984); Blann v. State, 15 Ark. App. 364, 695 S.W.2d 382 (1985). However, I write separately to express my additional concerns that today's holding unnecessarily restricts our standard of review regarding juror challenges and permits sworn jurors to be removed outside the time permitted by Section 16-33-303(b) (1987) without a demonstration of bias. Further, the majority's position is legally unsound, manifests a flawed and narrow perspective regarding how jurors are selected and removed, and undermines the essential political function that juries serve in our political system.

## I.  Standard of Review and Presumption of Bias

First, I strongly disagree with the view that our task on appellate review of the legal issues in this case is limited to determining whether a biased or incompetent juror replaced the removed juror. Our review must include an assessment regarding whether the trial court followed the proper procedure in determining whether the juror should have been removed. While our current law, as cited by the majority, allows and even requires a trial judge to unseat a juror to avoid the appearance of impropriety, the trial court here unseated a sworn juror based on the one-sided allegation by a police officer, a witness for the State, without conducting a legally sufficient inquiry to determine whether the unseated juror's continued service even presented an appearance of impropriety.

I can think of few things more harmful to the integrity of the judicial process than for judges to allow government witnesses to make allegations against jurors sworn to be fair and impartial and, based on the allegations alone, remove the jurors without even giving them a chance to know they were being challenged, let alone knowing the reason for the challenge and given a fair chance to answer it. The majority opinion does great harm to the notion of democracy by permitting a government witness to have a juror unseated based on the witness's distrust of a juror rather than the trial court's independently reached sound conclusion that the juror was unfit to serve due to actual bias.

While it is certainly true that the law guarantees one the right to a trial by competent jurors rather than specific persons, that truism begs the specific question presented by this case. Here, the trial court had sworn the jury. Arkansas Code Annotated section 16-33-303(b) requires that a challenge to an individual member of the panel "be taken before he is sworn in chief, but the court, for a good cause, may permit it to be made at any time *before the jury is completed.*" (Emphasis added.) The trial court plainly deviated from the statute when it allowed a sworn juror to be challenged *after* the panel had been accepted and begun to hear proof. However, pursuant to *Bradley v. State,* 320 Ark. 100, 396 S.W.2d 425 (1995), it appears that the trial court did not err *per se* by doing so.

Rather, the error lies with the trial court's failure to make a fair and even-handed inquiry to determine the validity or credibility of a police officer's allegation and to determine whether the juror in this case, Mr. Black, was biased. The longstanding law is that jurors

are presumed to be unbiased, and the burden of proving bias is on the party challenging the juror. *See Fleming v. State, supra; Blann v. State, supra.* Further, the mere fact that a juror knows a police officer who is a witness for the State does not *per se* require the juror's removal. *See Gammel & Spann v. State,* 259 Ark. 96, 531 S.W.2d 474 (1976)(affirming the trial court's refusal to allow a juror to be dismissed for cause where the juror was acquainted with a police officer who was a witness in the case).

Here, the trial court conducted an *in-camera* examination of the officer who asserted that he had arrested Mr. Black's son and had exchanged words with Mr. Black, who allegedly insisted that the officer was not going to arrest his son. The court informed Mr. Black that he was being removed because one of the witnesses stated that he knew him. However, the officer was not examined by trial counsel, nor was Mr. Black ever questioned to confirm or contradict the officer's allegation. It is especially disturbing that the majority holds the trial court did not abuse its discretion when it departed from the established legal procedure for allowing challenges given the glaring absence of any evidence in the record showing that Mr. Black was given anything approaching notice that his fitness to serve had been questioned. When the court informed Mr. Black that he was being removed and why, Mr. Black stated that he did not understand the reason for his removal and that to the best of his knowledge, he did not know any of the witnesses. Without further inquiry, the trial court determined that the officer's allegation about his encounter with Mr. Black when arresting his son demonstrated cause for removal because Mr. Black's service under those circumstances created an appearance of impropriety.

The majority ignores the trial court's disturbing failure to make sufficient inquiries to provide itself a basis upon which to make a reasoned decision. I am also concerned that the majority disregards the glaring fact that the trial court made no attempt to determine why the prosecution did not raise the allegation by the police officer until several hours after the witness testified and the juror had heard other evidence in the case. The identities of persons summoned for jury service on specific sessions of court are readily available to trial counsel before the date of trial in all cases. This is certainly true for murder trials. The prosecution had access to that information. Counsel for the prosecution knew that it would call the police officer to testify in the case. Given the nature of the prosecution's challenge to a sworn juror in the middle of trial hours after the witness testified, the trial court should have at least

inquired why the prosecution failed to ascertain whether the officer had dealt with any persons summoned for jury service in the case. Had the prosecution done so, it could have promptly asserted its concern about the propriety of the juror's service before the jurors were sworn. Yet the record shows the trial court did not require the prosecution to explain why its apparent lack of diligence in this matter should have been excused.

Thus, today's decision will undermine confidence in the integrity of the jury trial. Unless the presumed impartiality of sworn jurors is mere legal fiction or empty rhetoric, jurors deserve more respect, from trial and appellate judges most of all, than to be summarily disqualified based on unsubstantiated stories concerning out-of-court encounters with witnesses associated with one of the litigants.

## II. The Majority View is Legally Unsound

The majority opinion fails to fully discern the magnitude of the trial court's error because it ignores the manner in which jurors are selected in criminal trials. The trial court conducts *voir dire* of the venire by making general inquiries. Then the prosecution and defense counsel conduct *voir dire* of the panel and of individual members of the venire. An individual member of the venire may be challenged either for cause or peremptorily. Section 16-33-303 plainly provides that the challenge to an individual member of the venire, whether it be peremptory or for cause "must be taken before he is sworn in chief, but the court, for a good cause, may permit it to be made at any time before the jury is completed." Arkansas Code Annotated Section 16-33-303(c) states: "*The challenge to the juror shall first be made by the state and then by the defendant, and the state must exhaust its challenges to each particular juror before the juror is passed to the defendant for challenge or acceptance.*" (Emphasis added.)

Challenges to a trial juror may be general, *i.e.*, that the juror is disqualified in serving on any case, or particular, *i.e.*, that he is disqualified from serving in the case being tried. *See* Ark. Code Ann. § 16-33-304(b). A general challenge may be based on the fact that the person 1) is a legally unqualified person; 2) has a felony conviction; or 3) suffers from mental or physical unfitness or an inability to perform juror duties. *See* Ark. Code Ann. § 16-33-304(b)(1). Particular causes of challenge are based on actual and implied bias. *See* Ark. Code Ann. § 16-33-304(b)(2). Actual bias is

the existence of such a state of mind on the part of the juror regarding the case or either party which satisfies the trial court, in the exercise of its sound discretion, that the juror cannot try the case impartially and without prejudice to the substantial rights of the party challenging the juror. *See* Ark. Code Ann. § 16-33-304(b)(2)(A).

Section 16-33-304(b)(2)(B) states the conditions for a challenge of implied bias as follows:

> (B) A challenge for implied bias may be taken in the case of the juror; (i) Being related by consanguinity, or affinity, or who stands in the relation of guardian and ward, attorney and client, master and servant, landlord and tenant, employer and employed on wages, or who is a member of the family of the defendant or of the person alleged to be injured by the offense charged, or on whose complaint the prosecution was instituted;
> (ii) Being adverse to the defendant in a civil suit, or having complained against or being accused by him in a criminal prosecution;
> (iii) Having served on the grand jury that found the indictment or on the coroner's jury that inquired into the death of the party, whose death is the subject of the indictment;
> (iv) Having served on a trial jury which has tried another person for the offense charged in the indictment;
> (v) Having been one of the former jury sworn to try the same indictment and whose verdict was set aside, or who were discharged without indictment;
> (vi) Having served as a juror in a civil action brought against the defendant for the act charged in the indictment;
> (vii) When the offense is punishable with death, the entertaining of such conscientious opinions as would preclude him from finding the defendant guilty.

The trial court made no finding of actual bias; in fact, the trial court made no findings at all for the record. But a juror may be challenged either peremptorily or for cause. Challenges for cause must be based on either actual or implied bias. None of the implied-bias conditions apply to appellant's case. Thus, it necessarily follows that the trial court either removed the seated juror in the middle of trial after the entire panel had been sworn on a finding of actual bias; otherwise the trial court removed the juror based on what amounted to a peremptory challenge by the State in the middle of trial. In either instance, appellate review based on the abuse-of-discretion standard demands that we analyze the trial

court's action in the context of existing legal requirements and the established procedure for selecting and qualifying jurors for service.

Even if one assumes, for sake of discussion, that the witness had a confrontation with a person identified among those summoned for appellant's trial, it does not follow that the confrontation created such a state of mind on the part of the juror, in regard to appellant's case or to either party, that the juror could not try the case impartially and without prejudice to the substantial rights of the prosecution. That is, after all, the legal standard for finding actual juror bias. As the party challenging the impartiality of the seated juror, the prosecution was obligated to show the juror could not try the case impartially. If one accepts the allegation that the juror had a confrontation with the police officer in connection with something unrelated to the trial at hand and failed to disclose that fact during *voir dire*, that non-disclosure plainly is not necessarily evidence of actual bias in favor of the defense or against the prosecution.

The trial court's action and the majority position to affirm are even more disquieting if one analyzes the prosecution's challenge as a peremptory challenge. If the State could not satisfy the requirements of demonstrating actual bias, its allegation against the juror must be viewed as a belated effort to exercise a peremptory challenge to a seated juror in the middle of a murder trial, hours after counsel for the prosecution had been informed about an unrelated pretrial confrontation with a prosecution witness. The State has advanced no argument and cited no authority for the proposition that a peremptory challenge to a seated juror can be made after the entire panel of jurors has been accepted and sworn, let alone heard hours of proof. Thus, the majority decision affirming the trial court's removal of the juror based on what amounts to an untimely peremptory challenge is unprecedented.

### III. The Integrity of the Jury as a Political Entity

Finally, the trial court's action must also be understood as an insult to the integrity of the jury within the context of our political system, especially in cases where the government is a litigant. Since the Magna Carta was signed at Runnymede in June of 1215, the notion of trial by one's peers has been fundamental to the democratic ideal.

The role of the jury is especially significant to the American experience in criminal cases because more is at stake than simply the life and liberty of an accused person, as serious as that must be. That is because in our system the government has the burden of proof; *when one is accused of a crime, what is on trial is the government's proof against the accused.* Our United States Supreme Court has recognized the vital role that a jury plays as a check on governmental power. As stated by the Court in *Duncan v. Louisiana*, 391 U.S. 145, 156 (1968): "The petit jury has occupied a central position in our system of justice by safeguarding a person accused of a crime against the arbitrary exercise of power by prosecutor or judge." *See also Batson v. Kentucky*, 476 U.S. 79 (1986). Therefore, while a jury is to be neither biased nor prejudiced toward the accused or the government, it nonetheless acts as a representative of the governed.

Alexis de Tocqueville, the French historian and philosopher, examined the role of juries in *Democracy in America*, the classic work based on his two-year study of democracy in the United States in 1831 and 1832. He wrote:

> It would be a very narrow view to look upon the jury as a mere judicial institution; for however great its influence may be upon the decisions of the courts, it is still greater on the destinies of society at large. The jury is, above all, a political institution, and it must be regarded in this light in order to be duly appreciated. . . . *The institution of the jury may be aristocratic or democratic, according to the class from which the jurors are taken; but it always preserves its republican character, in that it places the real direction of society in the hands of the governed, and not in that of the government.* Force is never more than a transient element of success, and after force comes the notion of right. A government able to reach its enemies only upon a field of battle would soon be destroyed. The true sanction of political laws is to be found in penal legislation; and if that sanction is wanting, the law will sooner or later lose its cogency. *He who punishes the criminal is therefore the real master of society. Now the institution of the jury raises the people itself, or at least a class of citizens, to the bench of judges. The institution of the jury consequently invests the people, or that class of citizens, with the direction of society.*

*Democracy in America*, ed. Phillips Bradley, Vol. 1, p. 282 (Vintage Books, 1990) (emphasis added).

Thus, as Tocqueville recognized, a jury cannot serve its vital function unless it retains its republican character. That republican

character is undermined, if not eviscerated, when the State unilaterally determines whether a seated juror will serve. Such conduct is plainly antithetical to the notion that the jury "places the real direction of society in the hands of the governed, . . ., and not in that of the government." If a king unilaterally removed a seated juror, we would say that such conduct was inimical to a republican form of government. I do not find the conduct here to be less so, simply because here the conduct involved an agent of the government. To the contrary, the conduct in this case is even more disturbing. A police officer witness for the State in a criminal trial is unmistakably an agent of the State.

It is simply contrary to a republican form of government for a governmental agent to unilaterally dictate whether a sworn representative of the governed (the juror) will serve. If a police officer can influence trials by deciding who remains on a jury merely by alleging that he had a previous encounter with a juror, the prosecution obtains an unfair advantage at trial. As the Supreme Court stated in *Hayes v. Missouri*, 120 U.S. 68, 70 (1887), our judicial system should guarantee "not only freedom from any bias against the accused, but also from any prejudice against his prosecution. Between him and the state the scales are to be evenly held." For all practical purposes, the decision to affirm what the trial court did means that the ability of a juror to serve after being sworn is wholly dependent on the whim of persons who, according to our fundamental notions of the vital role that juries serve in a democratic society, should never be allowed to make such a determination.

I respectfully dissent.

OLLY NEAL, Judge, dissenting. I would reverse and remand this case for a new trial because the trial court committed reversible error by removing Mr. Black after the jury had been selected, impaneled, and sworn. The trial judge made no inquiry as to whether Mr. Black was a qualified juror, and accordingly, I do not agree with the majority that Strickland has not shown prejudice under these circumstances.

Jurors are presumed unbiased and the burden of proving actual bias is on the party challenging the juror. *Gardner v. State*, 296 Ark. 41, 754 S.W.2d 518 (1988). A potential juror may be challenged for cause if he or she is actually biased. *Henry v. State*, 309 Ark. 1, 828 S.W.2d 346 (1992). A venire person is actually biased if he or she cannot try the case impartially and without prejudice to the substantial rights of the party challenging. *Id.* This determination lies

within the sound discretion of the trial court. Further, the trial court is in a superior position to access the demeanor of prospective jurors. *Id.*

Our statute addressing the challenge to individual jurors provides that such challenges are to be taken prior to the juror being sworn. Ark. Code Ann. § 16-33-303(b) (Repl. 1999). The trial court, however, may permit a challenge to be made at any time before the jury is completed if good cause is shown. *Id.* This statute does not forbid a challenge for cause once a jury is impaneled and sworn, but does place limits on such a practice. Principally, a record must be made showing that the challenged juror was either not a qualified juror at the time that the panel was sworn or the juror has since become unqualified.[1]

In the instant case, no such record was made. Unlike the cases of *Bradley v. State*, 320 Ark. 100, 896 S.W.2d 425 (1995), and *Lee v. State*, 340 Ark. 504, 11 S.W.3d 553 (2000), cited by the majority in support of its decision, where the trial court held a hearing to determine whether the challenged juror was indeed unable to carry out the duties of a juror, in this case no such hearing was held.

Although the majority wishes to construe it as such, this case does not present a situation in which Mr. Black made representations that conflicted with Detective Hallum's testimony that he had a prior confrontation with Mr. Black. Instead, the record reveals that during voir dire the State asked if any of the venire persons had any dealings with or knowledge of any of the persons named in the prosecution's witness list. In light of the fact that the venire persons had no way of matching a face with a name it is not surprising that Mr. Black could not remember the name of a person he allegedly had a single contact with over a year earlier. It was only as the trial approached the end of the State's case-in-chief, that Detective Hallum, after seeing Mr. Black, informed the court that he had a prior

---

[1] 16-33-303 Challenge to trial jurors – Individual juror generally.
  (a)   The challenge to the individual juror is:
  (1)   For cause;
  (2)   Peremptory.
  (b)   The challenge must be taken before his is sworn in chief, but the court, for a good cause, may permit it to be made at any time before the jury is completed.
  (c)   The challenge to the juror shall first be made by the state and then by the defendant, and the state must exhaust its challenges to each particular juror before the juror is passed to the defendant for challenge or acceptance.

confrontation with Mr. Black. Based solely on this testimony, without even asking Mr. Black if he recognized Detective Hallum or if he recalled the incident of which Detective Hallum testified, the trial court excused Mr. Black from the jury.[2]

By excusing Mr. Black without any inquiry into his alleged bias halfway through the trial, the court in effect gave the State another peremptory strike. It bears restating that my disagreement with the actions of the trial court is by no means intended to imply that an unqualified juror, once sworn, has an irrevocable vested right to remain on the jury. Rather, once the parties have had their opportunity to uncover bias and have accepted a juror and that juror has been properly sworn, that juror should not be removed absent an inquiry into that juror's bias. The prejudicial error in this case was not that the trial court merely abused its discretion in striking Mr. Black, but that the trial court completely failed to exercise its discretion by aborting its responsibility to determine if the challenged juror was indeed biased.

I respectfully dissent.

HART and GRIFFEN, JJ., join.

---

[2] THE COURT: Mr. Black, could you step up here for a moment. You are probably wondering what we are doing. In the course of this trial a matter came up through one of the witnesses relative to you and it was just felt that it would be better for the trial of this case to excuse you and not have you sit in deliberations. So, I guess you are one of the lucky ones, you get to go home and you don't have to decide. Larry, could you find out if he needs to check in tonight about tomorrow.

MR. BLACK: Your Honor, what was the reason? I don't understand.

THE COURT: Well, it was just one of the people that were involved in this case had advised the Court that they know you and we discussed it with the attorneys and it was felt that it was better to excuse you because we had alternates rather than having you give the appearance that there might be something.

MR. BLACK: To the best of my knowledge I don't know anybody, your Honor. That is what I don't understand. (R.: 407-408)

THE COURT: Well, that may well be, but one of them said that they knew you. Don't leave yet.