Kenneth HARRISON *v.* STATE of Arkansas

CR 07-357                                        269 S.W.3d 321

Supreme Court of Arkansas
Opinion delivered December 6, 2007

*Bill Luppen*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

PAUL E. DANIELSON, Justice. Appellant Kenneth Harrison appeals from his capital-murder conviction and his sentence to life imprisonment without parole. He asserts two points on appeal: (1) that the circuit court erred in denying his motion for mistrial, the premise of which was alleged juror misconduct, and (2) that the circuit court erred in denying his motion for new trial, which was based upon newly discovered evidence of a witness's prior juvenile conviction for capital murder. We affirm.

Because Harrison does not challenge the sufficiency of the evidence, only a brief recitation of the facts with respect to the crime is required. Suffice it to say, Harrison was accused and convicted of capital murder after he shot and killed Fulton Watson at Roy's Service Center on West 12th Street in Little Rock on November 11, 2005. Two witnesses, Shuntae Ingram and Jacque Snider, were at the scene at the time of the shooting, and both testified against Harrison at his trial. As already stated, the jury

convicted Harrison of capital murder, and he was sentenced to life imprisonment without parole. He now appeals.

Harrison first argues that the circuit court erred in denying his mistrial motion, which was based on one juror's comments to two other jurors. He alleges that jurors Hall and Westbrook received improper information from juror Wright, which was not in evidence. He contends that the circuit court's denial of his mistrial motion, which left Hall and Westbrook on the jury, had the effect of tainting the jury's verdict by the outside information given to the two. Harrison avers that because there was a reasonable possibility of resulting prejudice to him by the circuit court's decision, this court should reverse the circuit court's denial of his motion for mistrial. The State urges that juror Wright's limited knowledge of Harrison and her vague statements caused no prejudice to him, especially due to the fact that both jurors who remained on the jury affirmed their ability to be impartial.

In the instant case, a review of the record reveals the following events. On the morning of the second day of trial, the bailiff alerted the circuit court to a problem regarding certain jurors, stating:

> BAILIFF: Before we get started, I have not mentioned this to anyone. I just had two jurors, Ms. Westbrook and Ms. Hall, come to me this morning and said that yesterday afternoon when the Court recessed and they went back to the back, juror number one, Ms. Wright, made a comment before the rest of the jurors, that she knew Mr. Harrison, and that she knew he was a mechanic. And Ms. Westbrook questioned Ms. Wright and asked her why did she not make that statement to the Court, when we — the Court, first asked her that. And she said it didn't matter. Ms. Hall also said that she concurred with that, that she could not sleep last night, because they knew that Ms. Wright knew Mr. Harrison, and that they had some problems with that this morning.
>
> They did not want it divulged, but I told them ethically, we didn't have a choice, but to notify the Court. But, they do have some problems with Ms. Wright, and she made the statement in front of the other jurors.

At that time, the circuit court called juror Wright and inquired of her. She stated that she "just" knew Harrison from when he worked "at

the shop on 12th Street," denying that she knew him personally. The circuit court then inquired of her further:

> CIRCUIT COURT: Then, how did you come to know that he worked there on 12th Street?
>
> Ms. WRIGHT: Because, over the years, I have stopped by there once, and he just looked at my car for something. I asked a question about my car. That was all.
>
> CIRCUIT COURT: And he had dealt with your car?
>
> Ms. WRIGHT: No, he just gave me an opinion.

The circuit court then asked whether either of the attorneys had any questions for Ms. Wright, and defense counsel stated that he had none. After Ms. Wright was permitted to return to the jury room and the State suggested excusing her, defense counsel made the following objection and requested a mistrial:

> DEFENSE COUNSEL: Your Honor, I think the jury is tainted now, not just Ms. Wright, but the other two jurors who heard that; obviously the one was troubled by it. I think the whole jury pool is tainted, and I'd ask for a mistrial.

Upon defense counsel's motion for mistrial, the circuit court called Ms. Hall and Ms. Westbrook. Ms. Hall acknowledged Ms. Wright's statement that she knew Harrison, and defense counsel then inquired of Ms. Hall:

> DEFENSE COUNSEL: Is that going to have any affect [sic] on you as a juror today? Do you think you can be a fair and impartial juror, knowing that?
>
> Ms. HALL: Oh, yeah.
>
> DEFENSE COUNSEL: No problems?
>
> Ms. HALL: Definitely no problem. And she didn't sway me, one way or the other.
>
> DEFENSE COUNSEL: Okay. That's all.

The circuit court then called Ms. Westbrook. When asked by the circuit court, she relayed the following account:

Ms. WESTBROOK: Well, she — I mean, she made the statement that she knew something, a little bit about, you know, what had happened, the day that it had happened. And I questioned her. I asked her why she didn't say anything when you all asked us if anyone knew anything about the case. And then she said, "Well, I don't really know him." But, you know, so —

. . . .

She just didn't believe that he would do something like that. And, I mean, that's when — I don't know if everybody else caught on it, because everybody was kind of talking, but I'm the one who actually questioned her and asked her, "Well, why didn't you say anything when we were asked if you knew anything concerning the case?" And Ms. Hall, she looked at me, because she — she heard it, too, evidently.

The prosecutor then asked Ms. Westbrook whether she would still be able to fairly weigh the evidence, to which she responded that she could. Defense counsel had no questions for her. Following some discussion between the circuit court and defense counsel, the circuit court excused Ms. Wright, but permitted Ms. Hall and Ms. Westbrook to remain on the jury, and denied Harrison's motion for mistrial.

We have held that a mistrial is an extreme and drastic remedy that will be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing with the trial or when the fundamental fairness of the trial has been manifestly affected. See *Thessing v. State*, 365 Ark. 384, 230 S.W.3d 526 (2006). A circuit court has wide discretion in granting or denying a mistrial motion, and, absent an abuse of that discretion, the circuit court's decision will not be disturbed on appeal. See *id.*

■ We cannot say that the circuit court abused its discretion in denying Harrison's mistrial motion. A review of the events reveals no evidence of prejudice to Harrison. Indeed, as the State points out in its brief, it could be said that Ms. Wright's statements were actually in favor of Harrison. Here, the circuit court removed Ms. Wright and questioned Ms. Westbrook and Ms. Hall, both of whom stated that they would be impartial. Accordingly, the circuit court did not abuse its discretion in denying Harrison's motion for mistrial.

Harrison's second point on appeal relates to his motion for new trial. A review of the record reveals that on September 8, 2006, Harrison filed his motion for new trial. In it, he asserted that the State failed to provide him with information that Shuntae Ingram had been convicted of capital murder when he was a juvenile. Harrison asserted that because it was a juvenile adjudication, it could not have been obtained by his due diligence. He claimed that he was prejudiced by the State's failure to disclose in that he was prevented from using that information to attack Ingram's credibility, prevented from questioning potential jurors on the matter during voir dire, and prevented from "developing a strategy of implicating Mr. Ingram in the murder." Harrison further requested a hearing on his motion. Four days later, on September 12, 2006, the circuit court denied the motion "[b]ased upon a review of Defendant's motion, applicable case law, and all other matters and things pertaining thereto[.]"

With respect to the denial of his new-trial motion, Harrison initially argues, without citing to any authority, that the circuit court's denial of his motion for new trial, without hearing any evidence or receiving a response to the motion by the State, violated his due-process rights under the federal and state constitutions and that this court should remand the matter for a full hearing on the motion. He further contends that he could have used Ingram's juvenile conviction for impeachment purposes, had he known about it prior to trial. The State responds that a hearing was not necessary on Harrison's new-trial motion, as one is not required when it would be superfluous. In addition, the State points to the fact that when Ingram testified, he was in prison clothes, due to his incarceration at the time of Harrison's trial, and that defense counsel had the opportunity to, and did, impeach Ingram. For these reasons, the State concludes, Harrison cannot demonstrate any reasonable probability that the result of his trial would have differed had he received the information and been able to use it.

We first hold that we are precluded from addressing Harrison's claim that the circuit court's failure to conduct a hearing on his new-trial motion violated his due-process rights, due to his failure to cite to any legal authority in support of that proposition. We have held time and time again that we will not reach the merits of an argument on appeal, even a constitutional argument, when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without

further research that the argument is well taken. *See Williams v. State*, 363 Ark. 395, 214 S.W.3d 829 (2005). Therefore, we decline to address his argument that the circuit court's failure to hold a hearing violated his due-process rights.

Turning to the merits of the circuit court's denial of the motion, we have held that the decision on whether to grant or deny a motion for new trial lies within the sound discretion of the circuit court. *See Henderson v. State*, 349 Ark. 701, 80 S.W.3d 374 (2002). We will reverse a circuit court's order granting or denying a motion for a new trial only if there is a manifest abuse of discretion. *See id.* In addition, we have emphasized that, in matters dealing with the prosecution's failure to disclose prior convictions, the crucial issue is whether the appellant was prejudiced by the failure to disclose. *See, e.g., Lee v. State*, 340 Ark. 504, 11 S.W.3d 553 (2000).

We cannot say that the circuit court manifestly abused its discretion in denying Harrison's motion, as our review reveals that Harrison was not prejudiced by the alleged lack of disclosure of Ingram's alleged juvenile conviction. First, during direct examination, Ingram acknowledged that he was dressed in blue and was currently incarcerated in the Arkansas Department of Correction. In addition, he acknowledged having several felony convictions:

> PROSECUTOR: And you've got some felony convictions, I think, for breaking or entering, back in 2000, is that correct?
>
> INGRAM: Yes.
>
> PROSECUTOR: And a couple of theft by receiving's [sic] in 2002?
>
> INGRAM: Yes.
>
> PROSECUTOR: And then a couple more theft by receiving's [sic] in 2005, and a failure to appear. Is that right?
>
> INGRAM: Yes.

Then, on cross-examination, defense counsel also pointed out that Ingram was currently serving time in prison and that he was out on bond at the time of the shooting:

DEFENSE COUNSEL: So, you're serving 15 years in the penitentiary for theft of property, is that right?

INGRAM: Theft by receiving.

DEFENSE COUNSEL: Cars — stealing cars?

INGRAM: Yeah.

DEFENSE COUNSEL: And was that during this time?

INGRAM: During the time, what?

DEFENSE COUNSEL: When this shooting happened, were you stealing cars then, or were you waiting to get to go to Court then, or —

INGRAM: I was out on bond.

■ It is clear to this court that Ingram's criminal record was made known to the jury and was used by the defense in an attempt to impeach him. We cannot say that a juvenile capital-murder conviction, if there indeed was one,[1] would have affected the jury's assessment of Ingram's credibility. For that reason, we cannot say that any lack of disclosure of Ingram's alleged juvenile conviction undermined confidence in the outcome of Harrison's trial. *See, e.g., Lee v. State, supra.* Accordingly, we affirm the circuit court's denial of Harrison's motion for new trial.[2]

---

[1] It is not evident from Harrison's motion for new trial that a juvenile conviction, in fact, existed.

[2] While we find no prejudice in the instant case, we do take this opportunity to remind the bench and bar that prior convictions *shall* be disclosed by the prosecution to the defense, upon request. Rule 17.1 of the Arkansas Rules of Criminal Procedure provides, in pertinent part:

> (a) Subject to the provisions of Rules 17.5 and 19.4, the prosecuting attorney shall disclose to defense counsel, upon timely request, the following material and information which is or may come within the possession, control, or knowledge of the prosecuting attorney:

. . . .

Pursuant to Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found. *See White v. State*, 370 Ark. 284, 259 S.W.3d 410 (2007).

Affirmed.

BROWN and IMBER, JJ., concur.

ANNABELLE CLINTON IMBER, Justice, concurring. The circuit court's denial of Harrison's motion for new trial should be summarily affirmed. This point on appeal is not preserved for appellate review because Harrison failed to prove the existence of Ingram's alleged juvenile conviction by means of a proffer under seal. Without such a proffer, any opinion on the merits is merely advisory. For this reason, I respectfully concur.

BROWN, J., joins this concurrence.

---

(vi) any record of prior criminal convictions of persons whom the prosecuting attorney intends to call as witnesses at any hearing or at trial, if the prosecuting attorney has such information.

Ark. R. Crim. P. 17.1(a)(vi) (2007).