2012 Ark. 198

**STATE of Arkansas, Appellant**

v.

**Kenneth HARRISON, Appellee.**

**No. CR 10–638.**

Supreme Court of Arkansas.

May 10, 2012.

Rehearing Denied June 14, 2012.

Dustin McDaniel, Atty. Gen. and David R. Raupp, Senior Asst. Atty. Gen., for appellant.

Kenneth Harrison, pro se.

DONALD L. CORBIN, Justice.

Appellant, the State of Arkansas, appeals the order of the Pulaski County Circuit Court granting Appellee, Kenneth Harrison, a new trial on his petition for postconviction relief filed pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. As Rule 37 proceedings are civil in nature, the State may bring this appeal pursuant to Rule 2(a)(3) of the Arkansas Rules of Appellate Procedure—Civil (providing for appeal from an order granting a new trial). *State v. Dillard,* 338 Ark. 571, 998 S.W.2d 750 (1999). Our jurisdiction is pursuant to Rule 37 and Arkansas Supreme Court Rule 1–2(a)(8) (2011). We cannot say the circuit court's findings are clearly erroneous, and we affirm the order granting postconviction relief.

Harrison was tried and convicted of the capital murder of Fulton Watson. The murder occurred at an automobile repair shop where Harrison, Watson, and other witnesses worked. Harrison also lived near the repair shop. Two eyewitnesses, Jacque Snider and Shuntae Ingram, testified and identified Harrison as Watson's killer. The jury sentenced Harrison to life imprisonment without parole. We affirmed the conviction and sentence. *Harrison v. State,* 371 Ark. 652, 269 S.W.3d 321 (2007).

Harrison then filed a petition pursuant to Rule 37. The circuit court held a hearing on the petition, and then entered an order granting a new trial. The State lodged its appeal. We did not initially reach the merits of the appeal, however, because the record did not demonstrate that Harrison's petition was timely filed and thus that the circuit court had jurisdiction. Accordingly, we reversed and vacated the order granting postconviction relief. *State v. Harrison,* 2011 Ark. 297, 2011 WL 3137615 (per curiam). Harrison filed a motion for reconsideration and attached the circuit court's docket sheet that indicated the possibility that the petition had been timely filed. We remanded for the circuit court to make findings of fact and

conclusions of law on the jurisdictional question. *State v. Harrison*, 2011 Ark. 467, 2011 WL 5248223 (per curiam). The circuit court returned its findings, and we received a supplemental record demonstrating that the verified petition was filed on February 25, 2008. As this court issued its mandate in the direct appeal on December 27, 2007, the petition was in fact timely filed within sixty days pursuant to Rule 37.2(c)(ii) of the Arkansas Rules of Criminal Procedure. We therefore granted the motion for reconsideration, and the merits of the appeal are now before us.

The circuit court granted relief on Harrison's petition based on its finding that trial counsel was ineffective for failing to discover the juvenile adjudication for capital murder of Shuntae Ingram, one of the two eyewitnesses who testified to Harrison's murder of Watson, and for failing to use that conviction to impeach Ingram at trial or to investigate Ingram's background and develop a strategy of defense implicating Ingram as the perpetrator of Watson's murder. Because Ingram had given inconsistent statements between the investigation of the case and the trial, the circuit court concluded that Harrison had demonstrated he was prejudiced by counsel's failure to investigate Ingram's background. This appeal followed.

For reversal of the order granting postconviction relief, the State asserts that the circuit court erred in three ways. First, the State contends the circuit court's finding that Harrison was prejudiced by trial counsel's failure to uncover witness Ingram's juvenile adjudication for capital murder directly contradicts this court's conclusion on direct appeal that Harrison had not demonstrated prejudice from the prosecutor's failure to disclose the juvenile adjudication. Second, the State contends that the circuit court's finding that trial counsel's failure to uncover Ingram's adjudication and rely on it to implicate Ingram is contrary to Rule 609 of the Arkansas Rules of Evidence, and *Zinger v. State*, 313 Ark. 70, 852 S.W.2d 320 (1993). Third, the State contends that both of the circuit court's findings as to prejudice, even if legally possible to reach despite the law-of-the-case doctrine and previously mentioned evidentiary bars, are clearly erroneous given the other evidence of Harrison's guilt presented at trial. Each of its arguments on appeal turns on the prejudice prong of the test, as the State contends that the circuit court erred in finding that Harrison met his burden of demonstrating prejudice.

This court will reverse a circuit court's decision granting postconviction relief only upon a showing that the court's finding was clearly erroneous. *State v. Brown*, 2009 Ark. 202, 307 S.W.3d 587. A finding is clearly erroneous when, although there is evidence to support it, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed. *Sartin v. State*, 2012 Ark. 155, 400 S.W.3d 694. In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *Id.* Our standard of review requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Sartin*, 2012 Ark. 155, 400 S.W.3d 694.

In asserting ineffective assistance of counsel under *Strickland*, the petitioner must show that counsel's performance was deficient. *Id.* This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Id.* The reviewing court must indulge in a strong presump-

tion that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.*

In order to satisfy the second prong of the *Strickland* test, the petitioner must show that counsel's deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id.* In doing so, the petitioner must show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Anderson v. State*, 2011 Ark. 488, at 3–4, 385 S.W.3d 783, 787 (quoting *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052).

For its first point for reversal, the State argues that the circuit court erred in finding that Harrison was prejudiced by trial counsel's failure to uncover Ingram's juvenile adjudication for capital murder because such a finding directly contradicts this court's conclusion on direct appeal of no prejudice. In short, the State contends that the doctrine of law of the case forecloses the possibility of relief on an ineffec-

tive-assistance-of-counsel claim due to this court's no-prejudice holding on the impeachment issue in the direct appeal.

Under the doctrine known as law of the case, the "decision of an appellate court establishes the law of the case for the trial upon remand and for the appellate court itself upon subsequent review." *Washington v. State*, 278 Ark. 5, 7, 643 S.W.2d 255, 256 (1982) (citing *Mayo v. Ark. Valley Trust Co.*, 137 Ark. 331, 209 S.W. 276 (1919)). The doctrine prevents an issue raised in a prior appeal from being raised in a subsequent appeal "unless the evidence materially varies between the two appeals." *Fairchild v. Norris*, 317 Ark. 166, 170, 876 S.W.2d 588, 590 (1994). However, the doctrine is not limited to issues raised in prior appeals as the doctrine was developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. *Id.* Accordingly, the conclusion of the court in one opinion becomes the law of the case on subsequent proceedings on the same cause and the matter is res judicata. *Green v. State*, 343 Ark. 244, 33 S.W.3d 485 (2000) (discussing the doctrine in the context of an appeal from a decision on a petition for postconviction relief asserting a claim of ineffective assistance of counsel). However, in order for the law-of-the-case doctrine to bar consideration of an issue, the merits of the claim must previously have been addressed and the claim must have been adjudicated. *Cloird v. State*, 352 Ark. 190, 99 S.W.3d 419 (2003); *see also Parmley v. Hobbs*, 2011 Ark. 75, 2011 WL 573830 (per curiam); *Mosley v. Norris*, 2010 Ark. 501, 2010 WL 5185784 (per curiam); *Smith v. State*, 2010 Ark. 137, 361 S.W.3d 840 (per curiam); *Jackson v. State*, 2009 Ark. 572, 2009 WL 3788895 (per curiam).

In the present case, despite the State's assertion to the contrary, this court's decision on Harrison's previous direct appeal did not address or adjudicate the same issue he now raises in his post-conviction proceedings. On direct appeal, the issue was whether the circuit court had abused its discretion in denying Harrison's motion for new trial, which was made on the grounds that the State had failed to disclose Ingram's juvenile-delinquency adjudication. Citing *Lee v. State*, 340 Ark. 504, 11 S.W.3d 553 (2000), this court emphasized that "in matters dealing with the prosecution's failure to disclose prior convictions, the crucial issue is whether the appellant was prejudiced by the failure to disclose." *Harrison*, 371 Ark. at 658, 269 S.W.3d at 325. This court then concluded that Harrison had not been prejudiced by the inability to impeach Ingram with the juvenile adjudication for capital murder because Ingram had been impeached with other felony convictions. This court further noted that Ingram testified on direct examination and acknowledged that he was currently incarcerated and testifying in prison clothes. On cross-examination, Ingram acknowledged that he was out on bond on charges of automobile theft at the time of Watson's murder. This court stated that

> [i]t is clear to this court that Ingram's criminal record was made known to the jury and was used by the defense in an attempt to impeach him. We cannot say that a juvenile capital-murder conviction, if there indeed was one, would have affected the jury's assessment of Ingram's credibility. For that reason, we cannot say that any lack of disclosure of Ingram's alleged juvenile conviction undermined confidence in the outcome of Harrison's trial. *See, e.g., Lee v. State*, [340 Ark. 504, 11 S.W.3d 553 (2000)]. Accordingly, we affirm the circuit court's denial of Harrison's motion for new trial.

*Harrison*, 371 Ark. at 659, 269 S.W.3d at 325–26. Thus, the issue on direct appeal was whether the circuit court abused its discretion in denying Harrison's motion for new trial based on the State's failure to disclose Ingram's juvenile conviction for capital murder, and this court adjudicated that question on the basis of an absence of prejudice.

The issue now before this court and before the circuit court on Harrison's Rule 37 petition, however, is different in that it involves the effectiveness of trial counsel's conduct in failing to discover, as opposed to the prosecutor's failure to disclose, Ingram's juvenile adjudication and to then use that knowledge to investigate and develop a theory of defense implicating Ingram as Watson's killer. Thus, while there was indeed an adjudication in the direct appeal that no prejudice resulted from trial counsel's failure or inability to impeach Ingram with the juvenile adjudication for capital murder, that no-prejudice adjudication did not include defense counsel's conduct in failing to investigate and develop a defense theory implicating Ingram.

In its order granting postconviction relief, the circuit court noted that, as Harrison himself pointed out to the court, despite the fact that juvenile proceedings are sealed, Ingram's juvenile adjudication for capital murder was discoverable by both the State and his trial counsel as there is a published opinion of Ingram's direct appeal issued by the Arkansas Court of Appeals, *Ingram v. State*, 53 Ark.App. 77, 918 S.W.2d 724 (1996). The circuit court also observed that at the hearing, trial counsel did not dispute Harrison's assertion that he had told counsel about Ingram's juvenile adjudication, and the circuit court then concluded that "the failure of the trial attorney to investigate the criminal record of such an eyewitness constitutes deficient

performance that prejudiced [Harrison]." In short, the issue that was adjudicated on direct appeal was the prosecutor's conduct in failing to disclose, and the issue at the Rule 37 proceeding was the defense counsel's conduct in failing to investigate and then develop a defense. These are two distinct issues. The latter of these issues, trial counsel's effectiveness in investigating and developing a defense implicating Ingram was not adjudicated on direct appeal, and resolution of that issue is therefore not barred by law of the case. Accordingly, we find no merit to the State's argument that the circuit court's findings on the ineffectiveness of trial counsel are barred by law of the case.

As its second point for reversal, the State contends that the finding that trial counsel's failure to uncover Ingram's juvenile adjudication for capital murder and develop a defense based on that adjudication is clearly erroneous as contrary to Rule 609 of the Arkansas Rules of Evidence, and *Zinger*, 313 Ark. 70, 852 S.W.2d 320. The State argues that, even if Ingram's juvenile conviction could have been used to impeach Ingram under Rule 609, it could not have been used substantively to show that Ingram committed Watson's murder. The State contends further that Ingram's delinquency adjudication does not directly link Ingram to Watson's murder and therefore does not satisfy the *Zinger* requirements for admissibility of evidence implicating the guilt of a person other than the defendant. The State's argument is a challenge to the circuit court's finding that Harrison satisfied his burden of demonstrating prejudice.

A careful review of the circuit court's order reveals that it speaks only in terms of allowing the admission of Ingram's juvenile adjudication for impeachment purposes and is completely silent with respect to its admission into evidence as substan-

tive evidence of Ingram's guilt. Although the order does speak in terms of defense counsel's failure to use the adjudication to spawn an investigation into Ingram's background and his possible involvement in Watson's murder, such a ruling does not equate to a ruling that the adjudication itself is admissible as substantive evidence of Ingram's guilt in the Watson murder; therefore, the ruling is not inconsistent with Rule 609 or *Zinger*.

To aid in an understanding of this issue, we quote the order and then discuss separately the State's argument as it relates to Rule 609 and *Zinger*. The order states, "[T]his court finds merit on the petitions with respect to the failure of counsel to impeach Shuntae Ingram with his juvenile conviction on capital murder and with the trial attorney's failure to investigate whether Shuntae Ingram was the perpetrator in this case." In addition, the order also states as follows:

Shuntae Ingram was allowed to be questioned before the jury only as one who had prior felony convictions of the nonviolent variety—not as one who had been convicted of capital murder which involved an aggravated robbery. This information, coupled with the trial attorney's statement at the hearing that an alternative suspect would more likely have been Shuntae Ingram, since, Ingram had been stealing cars from the victim, would have led to an in-depth defense that would have implicated the standard set forth in *Zinger v. State*, 313 Ark. 70, 852 S.W.2d 320 (1993), for allowing the defendant to point to another person as a perpetrator.

The failure of the trial attorney to investigate the background of this eyewitness, Shuntae Ingram, who gave inconsistent statements between the investigation of the case and the trial, constitutes a deficient performance that

prejudiced the defendant and affected the outcome of the trial.

■ While it is true that evidence of a juvenile adjudication is generally not admissible under Rule 609, that rule does provide an exception in criminal cases:

[T]he court may in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

Ark. R. Evid. 609(d) (2011). Rule 609 thus authorizes, as a matter within the trial court's discretion, the use of a delinquency adjudication to attack credibility, provided that the court is convinced that the rule's expressed limitations are satisfied. In addition, Rule 609 does not prohibit defense counsel's use of Ingram's prior juvenile adjudication to spawn an investigation into a defense theory implicating Ingram in Watson's murder. Accordingly, we find no merit to the State's argument that the circuit court's ruling is contrary to Rule 609.

■ We turn now to the *Zinger* aspect of the State's argument. The State argues that Ingram's juvenile-delinquency adjudication for an unrelated capital murder does not point directly to Ingram's commission of Watson's murder, and so would not be admissible under *Zinger*. As noted, the circuit court's ruling simply does not allow the admission of the delinquency adjudication as substantive evidence of Ingram's involvement in Watson's murder. The ruling does, however, indicate that defense counsel's discovery of Ingram's adjudication would have led to the development of an in-depth defense implicating Ingram's direct involvement in Watson's murder. The State argues further that trial counsel could not have developed an admissible defense theory implicating Ingram, however, due to the absence of the required direct link of Ingram to Watson's murder.

As announced in *Zinger*, this court's standard for admissibility of evidence implicating another person in the crime being charged is as follows:

A defendant may introduce evidence tending to show that someone other than the defendant committed the crime charged, but such evidence is inadmissible unless it points directly to the guilt of the third party. Evidence which does no more than create an inference or conjecture as to another's guilt is inadmissible.

. . . .

... [E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime.

*Zinger*, 313 Ark. at 75–76, 852 S.W.2d at 323 (quoting respectively *State v. Wilson*, 322 N.C. 117, 367 S.E.2d 589, 600 (1988), and *People v. Kaurish*, 52 Cal.3d 648, 276 Cal.Rptr. 788, 802 P.2d 278, 295–96 (1990)). At issue in *Zinger* was testimony from a police officer about a murder similar to the one there on trial that had occurred some thirty miles away in Louisiana. This court affirmed the trial court's exclusion of the evidence of the Louisiana murder on the basis that, although the murders were similar, there was no evidence connecting the suspects in the similar murder with the murder on trial.

This court later reconsidered the *Zinger* test for admissibility and concluded that it complied with the requirement announced in *Holmes v. South Carolina*, 547 U.S. 319,

126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) that such a test focus on the strength of the evidence implicating the third person and not on the relative strength of the prosecution's evidence against the defendant. *Armstrong v. State*, 373 Ark. 347, 284 S.W.3d 1 (2008). In the federal habeas proceeding, *Armstrong v. Hobbs*, 664 F.3d 1137 (8th Cir.2011), the United States Court of Appeals for the Eighth Circuit observed that, in the *Armstrong* case, the trial court had admitted evidence implicating the guilt of Armstrong's girlfriend, but excluded evidence implicating the guilt of the girlfriend's sisters. Armstrong had presented evidence that his girlfriend harassed the victim, was present at the murder scene, and lied to police during their investigation. This court had previously affirmed the trial court's exclusion of evidence relating specifically to the girlfriend's two sisters, as the only evidence tending to implicate them was a taped recording of them making alleged death threats against the victim. *See Armstrong v. State*, 366 Ark. 105, 233 S.W.3d 627 (2006).

In the present case, the circuit court based its ruling that an admissible in-depth defense implicating Ingram could have been developed in part on testimony from defense counsel that he knew Ingram had been stealing cars. At the hearing, Harrison presented testimony from other witnesses that Ingram and Watson may have had altercations over that fact. Significantly, the felony convictions used at trial to impeach Ingram support the fact that he was involved in automobile theft. In addition, Harrison also presented testimony from other witnesses that, while Harrison was working at the repair shop, he had fired Ingram for stealing money. While such testimony provides a possible motive for Ingram, the State is correct that a direct link of Ingram to Watson's murder is also required before such evidence would be admissible at trial. What the State fails to acknowledge, however, is that this direct link of Ingram to Watson's murder is indeed established by way of Ingram's testimony at trial that he was present at the scene of the murder when the murder occurred. Given that Ingram was one of only two eyewitnesses who testified against Harrison, and given that the defense theory implicating Ingram revolved around events occurring at the repair shop, which was the scene of the murder, we cannot say the circuit court clearly erred in concluding that the defense theory, if it had been properly investigated and developed, would satisfy the direct-link requirement of *Zinger*.

As its third and final point for reversal, the State argues that the circuit court erred in finding that Harrison satisfied the prejudice prong of *Strickland* in that there is no reasonable probability that the jury would have acquitted him, even if his trial counsel had discovered Ingram's juvenile adjudication and implemented a defense theory implicating Ingram, given the other evidence presented against Harrison at trial. The State points to the testimony of Larry Turner, who was working at a fast-food restaurant next door to the repair shop when the murder occurred. Turner testified that his manager told him that Harrison had shot Watson, and that Turner then went to the scene to check on Watson. The State relies primarily, however, on the testimony of the other eyewitness, Jacque Snider, that she saw Harrison shoot Watson.

The State's argument focuses on Snider and completely overlooks that the theory of defense that the circuit court found to be inadequately investigated also called into question the credibility of Snider and possibly implicated her as well. As Snider's stepfather is the twin brother of Har-

rison's father, her trial testimony was particularly damaging to Harrison. However, the evidence that Harrison presented at the Rule 37 hearing showed that Snider, in addition to Ingram, also gave inconsistent statements about what she saw at the scene. In addition, Harrison presented evidence at the hearing that Snider was involved in a relationship with Watson, that he had informed his counsel about a witness who would testify that Snider's husband was "stalking" Watson, and that Snider was angry with Harrison for his expressed disapproval of her relationship with Watson. Snider and Ingram were the only eyewitnesses to Watson's murder, and the credibility and motives of both could reasonably have been called into doubt by a jury if they had heard the evidence presented at the Rule 37 hearing. The prejudice prong of *Strickland* requires Harrison to demonstrate that there is a reasonable probability that, but for his counsel's failure to investigate Ingram's criminal background and develop a defense implicating Ingram as Watson's killer, the jury would have found reasonable doubt as to Harrison's guilt. Reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Sartin,* 2012 Ark. 155, 400 S.W.3d 694. Given the complete absence of any physical or scientific evidence linking Harrison to the murder, and given the potential bias and implication of both of the only two eyewitnesses against Harrison, we cannot say that the circuit court's finding that Harrison demonstrated prejudice from his counsel's failure to investigate and develop a defense was clearly erroneous.

Finally, we note that while the circuit court granted relief on one claim in Harrison's petition, the circuit court also denied Harrison's other claims. Although Harrison argues in his pro se brief on appeal that the circuit court erred in not granting relief on the remaining claims, he did not file a notice of appeal within thirty days as required by Rule 2(a)(4) of the Rules of Appellate Procedure—Criminal. Similarly, Harrison did not file a notice of cross-appeal within ten days of the State's appeal as required by Rule 4(a) of the Arkansas Rules of Appellate Procedure—Civil. *See Carter v. State,* 2010 Ark. 29, 2010 WL 199646 (acknowledging that the Rules of Appellate Procedure—Civil are applied in Rule 37 proceedings when necessary, as Rule 37 proceedings are civil in nature). Citing *Office of Child Support Enforcement v. Pyron,* 363 Ark. 521, 215 S.W.3d 637 (2005), the State contends that, as Appellee, Harrison is required to file a notice of cross-appeal in order to seek affirmative relief that was not granted in the lower court. We agree. *See State v. Fudge,* 361 Ark. 412, 206 S.W.3d 850 (2005) (addressing cross-appeal of appellee without expressly deciding whether a notice of cross-appeal is required in a State's appeal of postconviction proceedings). Accordingly, we do not address those arguments for affirmative relief raised in Harrison's brief on appeal.

In summary, there is evidence to support the circuit court's findings, and after reviewing the totality of the evidence, we are not firmly convinced the circuit court made a mistake. Accordingly, we cannot say the circuit court's findings were clearly erroneous, and we therefore affirm the order granting postconviction relief.

Affirmed.

HANNAH, C.J., and DANIELSON, J., dissent.

PAUL E. DANIELSON, Justice, dissenting.

I respectfully dissent. It is my opinion that Ingram's mere presence at the scene of the murder does not satisfy the direct-link requirement of *Zinger v. State,* 313

Ark. 70, 852 S.W.2d 320 (1993). As the majority correctly points out, "there must be direct or circumstantial evidence linking the third person to the *actual* perpetration of the crime." *Id.* at 76, 852 S.W.2d at 323 (quoting *People v. Kaurish,* 52 Cal.3d 648, 276 Cal.Rptr. 788, 802 P.2d 278, 296 (1990)) (emphasis added). Here, Ingram's presence at the crime scene merely establishes that he had an opportunity to commit the murder. Indeed, the mere presence of a person at the scene of a crime is not proof of his or her guilt. *See Green v. State,* 265 Ark. 179, 577 S.W.2d 586 (1979). Because I cannot say Ingram's mere presence directly links him to the actual perpetration of Watson's murder, I am left with a definite and firm conviction that a mistake has been committed, and I would hold that the circuit court clearly erred in granting post-conviction relief. For this reason, I respectfully dissent.

HANNAH, C.J., joins.