2013 Ark. 144

**Jeffrey GOLDEN, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 12–129.**

Supreme Court of Arkansas.

April 11, 2013.

Rehearing Denied May 16, 2013.

Jeff Rosenzweig, for appellant.

Dustin McDaniel, Att'y Gen., by: Jake H. Jones, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice.

Appellant, Jeffrey Golden, appeals the order of the Faulkner County Circuit Court denying his petition for postconviction relief filed pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure (2012). Our jurisdiction is pursuant to Rule 37 and Arkansas Supreme Court Rule 1–2(a)(8) (2012). We cannot say the circuit court's findings are clearly erroneous, and we affirm the order denying postconviction relief.

Golden was tried and convicted by a jury of two counts of aggravated robbery, one count of possession of firearms by a felon, and two counts of misdemeanor theft. These convictions were the result of two robberies in Faulkner County. The first was the robbery of a Subway restaurant on August 11, 2006, and the second was a robbery three days later of a Playworld Family Fun Center restaurant and arcade. Golden appealed, contending that the circuit court erred by refusing to admit into evidence a receipt from a movie theater supporting his alibi testimony and by denying his motion for a new trial that was made on the basis that the original video recording of the Subway robbery had not been made available to him. The Arkansas Court of Appeals found no merit to either argument on direct appeal and affirmed. Golden v. State, 2009 Ark. App. 632, 2009 WL 3153262.

Golden then filed a petition for postconviction relief pursuant to Rule 37, alleging that his trial counsel was ineffective for failing to subpoena witnesses from the movie theater that could authenticate the receipt for movie tickets to support his alibi as to the Subway robbery. The circuit court held a hearing on the petition, and then entered an order denying post-conviction relief on the basis that Golden had failed to establish that trial counsel's representation fell below the standards set in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, the circuit court's order stated that, considering the State's proof at trial and at the hearing that "anyone with access to Golden's debit card could have generated the receipt and bank transactions, this court cannot find that there is a reasonable probability the jury would have reached a different verdict had counsel subpoenaed the witnesses who testified at the evidentiary hearing." This appeal followed, where the sole issue being advanced for reversal is that the circuit court's ruling as to Golden's demonstration of prejudice on his claim for ineffective assistance of counsel was clearly erroneous.

Prior to reaching the merits of this appeal, we first address Golden's request to clear up a matter of procedural history. The Playworld robbery was charged, tried, and appealed under the circuit court's docket number CR 2006–2512. The Subway robbery was charged, tried, and appealed under the circuit court's docket number CR 2006–2508. Both cases were tried and appealed together. Accordingly, Golden's petition for postconviction relief was filed with respect to both lower-court docket numbers. Soon after the petition was filed, the circuit court entered an order in the Playworld case, CR 2006–2512, denying relief without a hearing. Much later, the circuit court held a hearing in which the only issue discussed was trial counsel's failure to authenticate the Rave receipt as corroboration of Golden's alibi to the Subway robbery, case number CR 2006–2508. According to the bar-code sticker appearing on the face of the order, the circuit court then entered the order appealed in the instant appeal in case number CR 2006–2508. Golden's counsel as-

serts that he never received notice of the order denying relief in case number CR 2006–2512, and in fact did not know it existed until he discovered it in the record while preparing the brief in this appeal. We acknowledge that there is nothing in that order to indicate it was ever communicated to Golden or his counsel. We also acknowledge that the circuit court's docket entries, as well as the court reporter's notation on the front of the transcript, indicate that the postconviction hearing was held with respect to both case numbers. However, as noted, the only issue discussed at the hearing related to the Subway robbery, case number CR 2006–2508. Moreover, there is nothing in the record to indicate that the order denying relief in case number CR 2006–2512 was ever set aside. We therefore deny counsel's request to set aside in this appeal the circuit court's order entered in case number CR 2006–2512.

Turning now to our standard of review for this appeal, we note that this court does not reverse the denial of postconviction relief unless the trial court's findings are clearly erroneous. *Sartin v. State,* 2012 Ark. 155, 400 S.W.3d 694. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.* In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *Id.* Our standard of review requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland,* 466 U.S. 668, 104 S.Ct. 2052. *Id.*

In asserting ineffective assistance of counsel under *Strickland,* the petitioner must show that counsel's performance was deficient. *State v. Harrison,* 2012 Ark. 198, 404 S.W.3d 830. This requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the petitioner by the Sixth Amendment. *Id.* The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* The petitioner claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.*

In order to satisfy the second prong of the *Strickland* test, the petitioner must show that counsel's deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id.* In doing so, the petitioner must show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* "[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." *Anderson v. State,* 2011 Ark. 488, at 3–4, 385 S.W.3d 783, 787 (quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052).

As his sole point for reversal, Golden contends that the circuit court's finding of no prejudice was clearly erroneous and "missed the whole point of the evidence"

he offered at the hearing—which he contends was to corroborate the testimony of Golden and his children as to his alibi and to thereby challenge the credibility of the identification and eyewitness testimony against him.

At trial, the State presented a theory that the same person committed three robberies in a very similar manner—the Playworld and Subway robberies in Faulkner County, as well as the robbery of a Dollar General store in Gravel Ridge located in Pulaski County, of which the State introduced evidence under Rule 404(b) of the Arkansas Rules of Evidence. At trial, Golden defended the charges by testifying that he was innocent of all three robberies and by offering alibi testimony and evidence as to the Subway robbery and the Pulaski County robbery. With regard to the Subway robbery, Golden and his two children testified that at the time of the robbery they were attending the movie Talledega Nights at the Rave Theater in Little Rock. Golden testified that through an online promotion he had obtained a voucher for one ticket, and that he used his debit card to purchase two tickets to the 8:15 p.m. showing of the movie. Golden explained that they arrived at the theater in time to attend the 7:45 p.m. showing, that the show ended around 9:30 p.m. or 9:45 p.m., and that they went home after that. Both of Golden's children testified that they left their home around seven or seven-thirty in the evening, that their father attended the movie with them, and that their father drove them home after the movie. During Golden's testimony, his trial counsel attempted to introduce a receipt showing that Golden's debit card was used to purchase two movie tickets and refreshments from the Rave Theater. The circuit court sustained the State's objection that the receipt was not self-authenticating and that the custodian of the records was not present to authenticate it. As noted, the court of appeals affirmed that ruling on direct appeal. *Golden*, 2009 Ark. App. 632, 2009 WL 3153262.

In his petition for postconviction relief, Golden alleged that it was ineffective assistance for trial counsel to have failed to call a witness to properly authenticate the receipt and that this failure satisfied the prejudice prong of the *Strickland* test. At the hearing on Golden's petition, Golden presented testimony from Cody O'Brien, general manager and keeper of the records of the Rave Theater, who stated that the receipt proffered at trial appeared to be something created in the normal course of business by the Rave Theater. He explained that the receipt showed that a certain credit card was used on August 11, 2006, on two occasions—at 7:26 p.m. for $18.00 to purchase tickets and then approximately one-half hour later to purchase $9.00 worth of refreshments. Also at the hearing, Golden presented the testimony of Carrie Shisler, vice-president of operations and keeper of records for Arvest Bank. During her testimony, records of Golden's bank account and debit-card transactions were admitted. She stated that Golden's account reflected two transactions to the Rave Theater for $18.00 and $9.00 on August 14, 2011. She explained that it takes several days for transactions to be posted, so it was not surprising to see the August 11 transactions posted three days later on August 14. On cross-examination, Ms. Shisler stated that there was no way for her to know who was actually holding the debit card and making the transaction. This statement on cross-examination was the basis of the circuit court's ruling that Golden had not demonstrated a reasonable probability that the jury would have reached a different verdict had his trial counsel subpoenaed the witnesses who testified at the postconviction hearing.

On appeal, Golden argues that the bank records confirming the same two transactions at the Rave Theater constitute unimpeachable corroboration of the authenticity of the Rave receipt. Golden argues further that the circuit court overlooked the purpose of the receipt proffered at trial, which was to serve as independently generated evidence corroborating the self-serving alibi testimony of Golden and his family. Golden points out that the evidence against him at trial consisted of eyewitness testimony with no physical evidence connecting Golden to the crimes. Citing *Perry v. New Hampshire,* —— U.S. ——, 132 S.Ct. 716, 181 L.Ed.2d 694 (2012) and its recognition that eyewitness testimony is fallible, Golden thus argues that his trial counsel's failure to properly authenticate the receipt deprived him of the ability to challenge the eyewitness testimony and to expose any flaws in the identification of Golden as the perpetrator. Golden emphasizes that, although there was surveillance video of the Subway robbery indicating the robbery occurred at 8:45 p.m., he was not able to test the accuracy of the video because it was never provided to him. Golden emphasizes further that the failure to provide the video was decided adversely to him on direct appeal. Accordingly, Golden contends in this appeal that he has therefore satisfied his burden of demonstrating a reasonable probability that the jury's result would have been different if he had been able to authenticate the Rave receipt at trial and that the circuit court was therefore clearly erroneous in concluding otherwise.

On review, we consider the totality of the evidence and determine whether there is a reasonable probability that the jury would have found reasonable doubt as to Golden's guilt if his trial counsel had obtained a witness to properly authenticate the Rave receipt. The eyewitness evidence at trial came from the two victims of the two Faulkner County robberies. Jeremy DeVooght, who was the victim at Subway, positively identified Golden from a photographic lineup and in court. Kristen Luyet, the victim at Playworld, also positively identified Golden from a photographic lineup and in court. In addition, Amanda Phelan, the victim of the robbery in Pulaski County, who testified subject to Rule 404(b), also identified Golden from a photographic lineup and in court. The jury heard argument from the State that all three eyewitnesses did not know each other, yet all three identified Golden and testified that the robberies occurred in much the same manner, with a man wearing a baseball cap and sunglasses demanding that money be placed in a vinyl bag while exposing a gun tucked in his pants.

In contrast to the foregoing State evidence, the jury heard the alibi testimony from Golden and his children about their family outing to see Talledega Nights at the Rave during the time the Subway robbery was committed. In addition to this alibi evidence, the jury also heard alibi evidence as to the Rule 404(b) robbery at the Dollar General store in Pulaski County. With respect to the Dollar General robbery, the jury heard testimony from Golden; Victoria Golden, his ex-wife; Sue Ann Petrus, the owner of the Sherwood Auto Plaza; and Sandi Myers, a salesperson at the Sherwood Auto Plaza, that Golden was helping his ex-wife purchase a vehicle at the time of the Dollar General robbery. During Ms. Petrus's testimony, sales documents dated the same date of the Dollar General robbery were introduced into evidence. Ms. Petrus testified that the sales contract had a time stamp indicating it was printed at 5:47 p.m. Although there was State evidence to the effect that the Dollar General was only a few minutes away from the Sherwood Auto Plaza, there was other testimony that the

drive between the two places could have taken as long as a half-hour to an hour during the evening rush-hour traffic, which was the time of the Dollar General robbery. Moreover, both Ms. Petrus and Ms. Myers testified that they did not see Golden leave the dealership during the purchase of the vehicle.

It is significant for purposes of our review that the jury found Golden guilty of the two Faulkner County robberies even after hearing the testimony of the owner of the Sherwood Auto Plaza and the salesperson to independently corroborate the alibi testimony of Golden and his ex-wife as to the Pulaski County robbery. The jury heard Golden's alibi for the Subway robbery, but did not hear the corroborating testimony of the Rave manager and the bank vice-president. Yet, as the circuit court observed, the bank vice-president testified that there was no way to know who was actually holding Golden's debit card and making the two transactions reflected on the receipt and the bank statement. Thus, the credibility of the unheard testimony corroborating the Subway alibi is subject to some doubt. Given the jury's apparent disregard of the testimony from the two witnesses from the Sherwood Auto Plaza who corroborated Golden's alibi for the Dollar General robbery, we simply cannot say that there is a reasonable probability that the jury would have acquitted Golden if they had heard the independently corroborating testimony of the Rave manager and the bank vice-president as to the Subway alibi. Accordingly, we cannot say the circuit court's finding of a failure to demonstrate *Strickland* prejudice was clearly erroneous.

The circuit court's order denying the petition for postconviction relief is affirmed.

HANNAH, C.J., and HART and HOOFMAN, JJ., dissent.

CLIFF HOOFMAN, Justice, dissenting.

I respectfully dissent. After reviewing the totality of the evidence, I am left with a definite and firm conviction that the circuit court erred in denying Golden's petition for postconviction relief. Specifically, I take issue with the analysis of the second prong of the *Strickland* test. I would conclude that had trial counsel properly authenticated documents corroborating Jeffrey Golden's alibi for the Subway robbery, there is a reasonable probability that the jury would have had reasonable doubt concerning his guilt.

Golden was tried and convicted of two robberies that occurred in Faulkner County—one at a Subway restaurant and one at Playworld Family Fun Center. Pursuant to Arkansas Rule of Evidence 404(b), the State introduced evidence of a similar robbery at a Dollar General store in Pulaski County through the testimony of a store employee. The majority concludes that the jury apparently disregarded the testimony of two defense witnesses—Ms. Petrus and Ms. Myers—who independently corroborated that Golden was at the Sherwood Auto Plaza purchasing a vehicle at the time of the Pulaski County robbery. Therefore, the majority reasons that it cannot be said that the jury would have acquitted Golden of the Faulkner County robberies had it heard the testimony of Mr. O'Brien, the Rave manager, and Ms. Shisler, the Arvest vice-president, corroborating Golden's testimony that he was at a movie during the Subway robbery.

In my opinion, it is not apparent that the jury disregarded the testimony of Ms. Petrus and Ms. Myers. Rather, it is just as likely that the jury believed them and concluded that Golden did not commit the Pulaski County robbery. Regardless, the jury was left to weigh the eyewitness testi-

mony of Jeremy DeVooght, the Subway employee, and Kristen Luyet, the Playworld employee, who both identified Golden from a photographic lineup, against the self-serving testimony of Golden and his two children that they were at a movie at the time of the Subway robbery. The only fact obvious to me is that the jury gave credence to the identifications made by DeVooght and Luyet. Had the jury had the benefit of the testimony of Mr. O'Brien and Ms. Shisler, I think it likely the jury would have had reasonable doubt as to those identifications.

Both DeVooght and Luyet testified that the perpetrator wore large sunglasses and a hat during the robberies. In fact, the record reveals that during the presentation of the photographic lineup to DeVooght, the police officer covered the suspects' faces from the nose up to simulate the fact that the top half of the perpetrator's face was covered at the time of the crime. In support of his mistaken-identity defense, Golden testified that at the time of the Subway robbery, he was watching a movie with his two children at Rave Motion Pictures in Little Rock. Both of his children corroborated this. However, a jury need not believe the defendant's self-serving testimony. *See Brown v. State*, 374 Ark. 341, 288 S.W.3d 226 (2008). Thus, it is critically important that Mr. O'Brien and Ms. Shisler independently verified Golden's alibi testimony. The Rave receipts and the Arvest bank records establish that Golden's debit card was used at the movie theater to buy tickets and refreshments on the date and time in question. This is demonstrative evidence supporting Golden's testimony; it is not merely cumulative evidence, as the State suggests in its brief on appeal.

The majority notes that even had the jury heard the testimony of the Rave manager and the Arvest vice-president, that evidence did not prove that Golden was the one using his debit card. However, we are required to review the totality of the evidence in assessing whether Golden is entitled to a new trial. This is not a case where the State's evidence was overwhelming. Here, the State's only evidence of Golden's guilt was the eyewitness testimony of two individuals who admitted that they could not see half of the perpetrator's face. In my view, had the jury heard the testimony of Mr. O'Brien and Ms. Shisler, corroborating Golden's alibi for the Subway robbery, there is a reasonable probability that the decision would have been different. I would reverse the circuit court's denial of Golden's petition for post-conviction relief.

HANNAH, C.J., and HART, J., join in this dissent.