Jamie Darnell LEE *v.* STATE of Arkansas

CR 98-485 11 S.W.3d 553

Supreme Court of Arkansas
Opinion delivered March 2, 2000

*Mickey Buchanan*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Jamie Darnell Lee appeals his judgment of conviction for capital murder and for four counts of first-degree battery, all stemming from shootings that took place at a Texarkana nightclub. He was sentenced to life imprisonment without the possibility of parole for capital murder and for twenty years on each of the first-degree battery charges, to run consecutively. He raises four issues on appeal: (1) the trial court erred in refusing to grant him a new trial

based on the State's failure to disclose exculpatory impeaching information; (2) the trial court erred in foreclosing the defense from introducing evidence of gang affiliation and from cross-examining witnesses on the same matter; (3) the trial court abused its discretion in dismissing the sole black from the jury rather than declaring a mistrial; and (4) remarks made by the prosecutor in closing argument mandate reversal. We find no reversible error, and we affirm.

The events leading up to the criminal charges and convictions all occurred at the Ace of Clubs nightclub in Texarkana in the early morning hours of October 6, 1996. According to witnesses for the State, at about 3:00 a.m. that morning, the rap song "Bow Down" was playing in the nightclub for a crowd of patrons who were young men and women. The rap song deals with two rival gangs — one on the west side and one on the east side. The song depicts the west side gang as having more power. Some of the male patrons at the nightclub were members of rival gangs in Texarkana, Arkansas and Texarkana, Texas. Jamie Lee was a member of a Texarkana, Texas gang.

During the playing of "Bow Down," State witnesses testified that Lee stood on a chair and began acting out the rap song, while making gestures that some considered gang signs. His actions were taken by Texarkana, Arkansas gang members as being a taunt and a challenge, because he identified himself with a west side gang. Fighting broke out, and at some point Lee was handed a gun. According to several State witnesses, the gun was given to him by Demetric Williams, and Lee opened fire. Danyon Green was shot and killed, while Kinthun Arnold, Johnny Hardy, Charvez Williams, and Trolaurice Walker were wounded. Lee then ran out of the nightclub. According to one State witness, on his way out, Lee stopped and "clicked" his gun at the head of Fred Bradley, who was under a table. Lee's defense, on the other hand, was that he never had a gun in his possession. Several defense witnesses disputed the testimony of the State witnesses and testified that they never saw Lee with a gun, although other people in the nightclub did have guns.

Lee was found guilty of all five charges and sentenced as previously noted. He moved for a new trial, claiming multiple errors by the trial court, and the motion was denied.

## I. Disclosure of Exculpatory Impeaching Information

For his first point, Lee contends that the State failed to disclose the criminal histories of Johnny Hardy, Kinthun Arnold, and Fred Bradley, though discovery motions for those histories and for any impeachment information had been filed. The specific information that Lee claims he was not privy to was that Hardy was a twice-convicted felon; that Arnold was arrested for theft and breaking and entering during Lee's trial and later charged, although the charged acts had occurred in 1994; and that Bradley had been charged with third-degree battery enhanced by gang-related activity into a Class B felony before Lee's trial, and the charge was pending at the time of the trial. In short, Lee claims he was hampered by this lack of information in impeaching the State witnesses. He further maintains that the trial was largely a swearing match between State and defense witnesses regarding what happened, and, as a consequence, impeachment of State witnesses was critical to his case.

The operative rule of procedure for disclosure of a witness's criminal history is Rule 17.1, which reads in pertinent part:

(a) Subject to the provisions of Rules 17.5 and 19.4, the prosecuting attorney shall disclose to defense counsel, upon timely request, the following material and information which is or may come within the possession, control, or knowledge of the prosecuting attorney:

....

(vi) any record of prior criminal convictions of persons whom the prosecuting attorney intends to call as witnesses at any hearing or at trial, if the prosecuting attorney has such information.

Ark. R. Crim. P. 17.1(a)(vi). This court has held that it is reversible error when a prosecutor fails to comply with a defendant's timely request for disclosure of information, when that failure results in prejudice to that defendant. *Hall v. State*, 306 Ark. 329, 812 S.W.2d 688 (1991). The information must be disclosed by the prosecutor in sufficient time to permit the defense to make beneficial use of it. *Henry v. State*, 337 Ark. 310, 989 S.W.2d 894 (1999). When the prosecutor fails to provide information, the burden is on the defendant/appellant to show that the omission was sufficient to

undermine confidence in the outcome of the trial. *White v. State*, 330 Ark. 813, 958 S.W.2d 519 (1997).

In the instant case, Lee concedes that the prosecutor provided him with information about the prior convictions of Arnold and Bradley, leaving only a question about the prosecutor's failure to disclose the prior convictions of Johnny Hardy. At the hearing on the motion for a new trial, the prosecutor admitted that he had no documentary proof that he had disclosed Hardy's prior convictions, but he said that he remembered discussing the matter with one of Lee's attorneys. Lee's attorneys stated that they were not given the information prior to trial.

Hardy, however, testified at Lee's trial dressed in prison garb and stated on direct examination that he was currently awaiting transfer to the state penitentiary for a parole violation resulting from a conviction in 1985 on charges of burglary and theft of property. He stated that he was already serving a sentence for breaking and entering and theft. He further testified that he pled guilty to other instances of theft in 1984. On cross-examination, Lee's attorney asked him about his parole violation several times.

This court has emphasized in its decisions that the crucial issue in such matters is whether Lee was prejudiced by the prosecutor's failure to disclose the information about Hardy's convictions. *See Rychtarik v. State*, 334 Ark. 492, 976 S.W.2d 374 (1998); *Johnson v. State*, 333 Ark. 673, 972 S.W.2d 935 (1998); *McNeese v. State*, 326 Ark. 787, 935 S.W.2d 246 (1996). Here, it is difficult to see how Lee was prejudiced. Even assuming that the prosecutor did not fully disclose Hardy's background, the prosecutor did question Hardy about his prior convictions when he was testifying before the jury, and it was obvious from his prison clothes that he was currently incarcerated. Further, Lee's attorney questioned Hardy about his parole violations on cross-examination. In *Nelson v. State*, 324 Ark. 404, 921 S.W.2d 593 (1996), we concluded that in light of the fact that the witness admitted in testimony that he had a prior record of six felony convictions, his credibility was impeached, and the appellant could not show prejudice resulting from the asserted discovery violation. The same principle holds true in the case before us.

The corollary issue under this point is whether the prosecution was required to disclose any criminal information regarding

Bradley, Arnold, and Hardy, even if that information did not solely relate to criminal convictions. Under Ark. R. Crim. P. 17.1(d), the prosecution is required to disclose any information which "tends to negate the guilt" of the defendant. Moreover, in *Harrell v. State*, 331 Ark. 232, 962 S.W.2d 325 (1998), we discussed the holdings of the United States Supreme Court in *Brady v. Maryland*, 373 U.S. 83 (1963) and *United States v. Bagley*, 473 U.S. 667 (1985). We noted that in *Brady*, the Court held that the prosecution's suppression of evidence favorable to an accused violates the defendant's due process rights, where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The Court extended this rule to include impeachment evidence, as well as exculpatory evidence, in *United States v. Bagley*, *supra*. This court adopted the same reasoning and said:

> In order for the appellants to prevail on this issue, they must demonstrate a reasonable probability that the result would have been different had they had the information concerning Davis's prior possession of cocaine. The court in *United States v. Bagley*, *supra*, held that "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *See Pennsylvania v. Ritchie*, 480 U.S. 39 (1987); *Yates v. State*, 303 Ark. 79, 794 S.W.2d 133 (1990).

*Harrell*, 331 Ark. at 238, 962 S.W.2d at 328.

In the case at hand, the State argues that the evidence of the witnesses' prior criminal activity was not material, and, therefore, *Brady* and *Bagley* are not applicable. We disagree because the undisclosed information appears to have been material, because it went to the credibility of the State's witnesses. We cannot say, however, that there is a reasonable probability that the results of this trial would have been different even were we to exclude the testimony of Arnold, Bradley, and Hardy altogether. There still would have been three witnesses for the State who identified Lee as the shooter. Furthermore, Lee presented no evidence that any charges were dropped against State witnesses as part of an agreement to obtain their testimony. *See Haire v. State*, 340 Ark. 11, 8 S.W.3d 468 (2000). We hold that the failure to fully disclose the criminal histories of the three State witnesses does not constitute reversible error.

## II. Evidence of Gang Affiliation

For his second point, Lee urges that evidence of gang or group affiliation was vital to this trial, because the credibility of the witnesses for both sides was a major issue. In this regard, he notes that Officer Ronald Hudson of the Texarkana Police Department testified that he obtained an arrest warrant for Lee based upon the statements of Brian Grady, James Jamison, and Fred Bradley. Lee then states that he attempted to get the police officer to testify about the Department's gang activities unit to show that Grady, Jamison, and Bradley had gang affiliations. He concedes that this same information had come in during the testimony of Officer James Ewing of the Texarkana Police Department during the State's case-in-chief, but he argues that because the trial court refused to let Officer Hudson testify of his knowledge of the witnesses' gang-related activities, it prevented him from developing evidence of bias in the State's witnesses. This evidence of gang affiliation was relevant, he urges, to show the motive of these witnesses to lie and their state of mind. Because the witnesses denied that they were members of a gang, he contends that he should have been allowed to contradict that testimony. Additionally, he points out that he attempted to question several witnesses about gang graffiti written on a wall after the shootings, but the trial court refused to let him to do this.[1]

The trial court has wide discretion on rulings concerning the admissibility of evidence, and this court will not reverse such a ruling absent an abuse of discretion. *Weaver v. State*, 324 Ark. 290, 920 S.W.2d 491 (1996); *Miller v. State*, 280 Ark. 551, 660 S.W.2d 163 (1983). Evidence is relevant if it has any tendency to make the existence of a fact more or less probable. Ark. R. Evid. 401; *see also Weaver v. State, supra*. This court has held that evidence of gang membership is relevant to show motive for murder. *Scott v. State*, 325 Ark. 267, 924 S.W.2d 248 (1996). In the instant case, the trial court excluded the gang-related evidence in question after finding that it was not relevant. The court based this lack of relevancy on the fact that Lee's defense was not self-defense against a rival gang but rather that he never had a gun that night.

---

[1] The graffiti read "Tad, pimp some hoes for the pack." The nickname of the decedent, Danyon Green, was "Tat."

■ We first examine Officer Hudson's excluded testimony and the sequence of events. Officer Ewing had testified as part of the State's case that State witnesses Fred Bradley, Brian Grady, and James Jamison were all members of a gang. On cross-examination by the defense, the three witnesses had denied it. Lee's defense counsel sought to rebut the denials by Officer Hudson's testimony. We find no fault in the trial court's exclusion of Officer Hudson's testimony. Rule 608(b) of the Rules of Evidence provides that specific instances of the conduct of a witness may not be proved by extrinsic evidence to attack that witness's credibility. This appears to be precisely what the defense was attempting to do. The defense was trying to attack the credibility of State witnesses concerning gang membership by extrinsic evidence, that is, by Officer Hudson's testimony. Furthermore, there was abundant evidence in addition to the testimony of Officer Ewing that Bradley, Grady, and Jamison had a gang affiliation, and, thus, Officer Hudson's testimony would have been cumulative. See *Windsor v. State*, 338 Ark. 649, 1 S.W.3d 20 (1999).

■ We further question the validity of Lee's argument that he was attempting to show bias on the part of these witnesses by Officer Hudson's testimony. The whole tenor of Lee's defense is that he did not do the shootings and never had a gun. Thus, whether gang rivalry precipitated the shootings has a diminished significance, as does Lee's contention that these three witnesses lied because of gang rivalry when they pinpointed him as the culprit. We conclude that there was no reversible error in the trial court's disallowance of Officer Hudson's testimony.

■ With regard to the gang graffiti, it appears that Lee was attempting to show that the graffiti was related to the shooting because it contained the word "Tad," which was close to the nickname of the decedent, Danyon Green. We find no error in the trial court's ruling on this point. Lee offered no proof on who wrote the graffiti, when it was written, or how it related to his case. The graffiti is also cumulative, because there was abundant evidence otherwise showing that the shootings were motivated by gang relationships. There was no abuse of discretion by the trial court in this regard.

### III. Juror Paxton

Lee next contends that the trial court erred because it took the word of jail trusty, Sandy Davis, over the word of a juror, Joe Paxton. On the third day of the trial, the trial court excused Paxton, who is black, as a juror because he was discussing the trial with third parties, contrary to the court's instructions. He was replaced by an alternate juror who was white. Lee is black. Lee also points out that the jail trusty reported that two or three other jurors were talking about the case and that those jurors should have been removed as well. He argues that if Paxton was tainted, the others were too, and the trial court had no choice but to declare a mistrial.

The record reflects a number of problems concerning Juror Paxton. Early on in the trial, defense counsel informed the court that Paxton had approached him and told him that he was a famous singer. The trial judge responded that he would watch Paxton and "see how things go." Then, during the trial, the jail trusty told a deputy sheriff that Paxton had discussed the trial with him, in violation of the court's admonition that jurors were not to discuss the case. When questioned by the judge, Paxton answered that he may have talked to the trusty but did not discuss the trial with him. The judge then alluded to Paxton's erratic behavior and decided to excuse Paxton and to seat the remaining alternate in his place.

We have held in the past that an appellant must show prejudice, when the trial court removes a juror and seats an alternate in the juror's place. *Heinze v. State*, 309 Ark. 162, 827 S.W.2d 658 (1992). We review such matters under an abuse of discretion standard. *Latham v. State*, 318 Ark. 19, 883 S.W.2d 461 (1994). Here, the trial court conducted an investigation of all twelve jurors and determined, contrary to Lee's assertion, that Paxton was the only one who talked to the jail trusty, though Paxton denied that he discussed the case. One of the other jurors also told the court that Paxton tried to speak to her, but that she refused and left. She did not state that he attempted to talk to her about the case. This juror also said that she saw Paxton talking to someone else, but she did not know who it was. She added that it might have been one of the victims in this case. In view of all of this, the trial court determined that it was in the best interest of both parties that Paxton be excused. Lee's counsel argued that the trial court was

taking the trusty's word over Paxton's. The trial court answered that the trusty's account was corroborated by that of another juror.

 The issue on this point is whether the trial court abused its discretion in removing the juror, and whether Lee was prejudiced in any regard by the seating of the alternate. *Latham v. State, supra.* We conclude that the trial court did not abuse its discretion in removing Paxton from the jury. It is true that this matter was decided largely as one of credibility, but this court has consistently held that the trial court is in the best position to judge the credibility of the witnesses and to resolve any conflicts in that testimony. *See, e.g., Wright v. State,* 335 Ark. 395, 983 S.W.2d 387 (1998); *Johninson v. State,* 330 Ark. 381, 953 S.W.2d 883 (1997). The trial court found that Paxton was the only juror who discussed the case with the jail trusty, and we have no reason to disagree with that conclusion other than the fact that Lee disputes it. Further, the State correctly observes that Lee has failed to show that he was prejudiced in any respect by the seating of the alternate. *See Heinze v. State, supra.* Because no prejudice has been shown, we affirm the trial court's decision.

## IV. Closing Argument

For his final point, Lee claims that the trial court's refusal to sustain his objections to the prosecutor's closing argument is reversible error. He argues that this court has held that trial counsel are given leeway in closing argument but emphasizes that the remarks in this case invited the jurors to discard their objectivity and to take matters into their own hands as part of law enforcement to stop gang-related violence. He further argues that to allow the prosecutor to sound a "send-a-message" theme in closing argument is reversible error. Specifically, he requests this court to reverse cases such as *Muldrew v. State,* 331 Ark. 519, 963 S.W.2d 580 (1998), where we have affirmed a ruling to allow a "send-a-message" argument. The parts of the prosecutor's argument that Lee objected to follow:

> You can use your common knowledge, ladies and gentlemen, in evaluating the evidence in this case. I submit to you it's common knowledge that there is just simply just too much violence going on in this town. And I'm asking you to help us enforce the law and to stop this violence.

....

And, ladies and gentlemen, we've got to stop it on both sides of town. All we can do about it is stop here on this side of town. And on behalf of law enforcement on both sides of town I'm asking you to help us stop it to the extent that we can right now.

....

Help us enforce the law, ladies and gentlemen, since he continually interrupts me I want to repeat that. Help us enforce the law to the extent we can. And the only way, or best way, to do it is convict this defendant of capital murder and four counts of battery in the first degree as charged. And this will hopefully enforce the law by deterring or stopping this guy forever from coming over here and shooting people in the back and at the same time send a message to like minded people that if you want to pursue the life of a criminal you better get away from here.

....

We've got to stop people from acting like this guy did in this case. And the only way to do that is to send a message to him and send a message to people that think like him that if they do it and they come over on this side of town and they do it they're going to get convicted for doing it. And they're going to be dealt with severely.

We decline to reverse our previous cases on this point. The trial court clearly has broad discretion in controlling trial counsel in closing arguments, and we will not disturb a trial court's ruling regarding an objection during closing argument absent a manifest abuse of discretion. *Muldrew v. State, supra*; *Lee v. State*, 326 Ark. 529, 932 S.W.2d 756 (1996). In *Muldrew*, the prosecutor, among other things, argued in a crack cocaine case: "Let's send a message to people in this community that we don't really want these kind of folks around here." We noted in *Muldrew* that a mistrial is an extreme remedy and one that should not be used unless there has been an error so prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial itself has been obviously affected. We also noted in *Muldrew* that remarks requiring reversal are rare and require an appeal to the jurors' passions. The appellant in *Muldrew* argued to this court that the remarks were improper because they went beyond the evidence and were a manifest appeal to the jury's emotions. We held that the appellant's argument was without merit.

There are other cases where we have allowed comparable "send-a-message" arguments. In *Love v. State*, 324 Ark. 526, 922 S.W.2d 701 (1996), we held that "send-a-message" themes from the prosecutor during closing argument were not improper:

> Granted, the trial court commented that he hoped to send a message to people who might be inclined to engage in criminal activity. However, Love cites no authority for his argument that such a consideration is improper. *Stevens v. State*, 319 Ark. 640, 893 S.W.2d 773 (1995). Further, Ark. Code Ann. § 16-90-801(a)(5)(Supp. 1995) provides that a primary purpose of sentencing a person convicted of a crime is to "deter criminal behavior and foster respect for the law."

*Id.* at 532, 922 S.W.2d at 704.

The trial court did not err in rejecting the motion to declare a mistrial. Closing arguments are not evidence, and the jury was instructed to that effect. Moreover, this was not a "golden rule" argument as Lee suggests. A golden rule argument is one where the jury is implored to put themselves in the position of the victim. *Puckett v. State*, 324 Ark. 81, 918 S.W.2d 707 (1996). That is not what the prosecutor argued here. There was no abuse of discretion by the trial court in declining to declare a mistrial.

In his conclusion, Lee makes a cumulative error argument. However, no such argument was made to the trial court, and no ruling was obtained. Lee admits this. Our caselaw is clear that we will not entertain a cumulative error argument unless first made to the trial court. *Munson v. State*, 331 Ark. 41, 959 S.W.2d 391 (1998); *Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998).

The record has been examined in accordance with Ark. Sup. Ct. R. 4-3(h), and no reversible error has been found.

Affirmed.