

Cite as 2013 Ark. 446

# SUPREME COURT OF ARKANSAS

No. CR–13–270

| | |
|---|---|
| RICHARD INGRAM<br>APPELLANT | **Opinion Delivered** November 7, 2013 |
| V. | APPEAL FROM THE JACKSON COUNTY CIRCUIT COURT [NO. CR–2010-144] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE HAROLD S. ERWIN, JUDGE |
| | <u>AFFIRMED</u>. |

**PAUL E. DANIELSON, Associate Justice**

Appellant Richard Ingram appeals from an order of the Jackson County Circuit Court convicting him of capital murder for the death of his twenty-three-month-old son and sentencing him to life imprisonment without parole. His sole assertion on appeal is that the circuit court committed reversible error by removing a juror without justification. We disagree and affirm the conviction and sentence.

The relevant facts are these. Before jury selection, both the State and Ingram were asked to name their witnesses. The names were read to the venire. Before opening statements began, the circuit court gave the following instructions to the jury:

> [D]uring any recess or adjournment you must not talk to any one of the attorneys, parties, or witnesses about anything. You should not even pass the time of day with them in the courthouse or anywhere else. I say this not because I think you would discuss the case with them but simply because it is not proper for you to be seen talking with one side or another. In other words it is important that you be and appear to be impartial at all times during the trial of this cause. . . . I again remind you

SLIP OPINION

not to discuss this case or talk at all with any attorneys, parties, or witnesses in this case.

On the second day of trial, the bailiff informed the court that he had twice witnessed a juror speaking with a group of individuals that he believed to be witnesses or family members of Ingram. The circuit court summoned the individuals to chambers for questioning. Three of them had been identified as potential witnesses and one of the three, Ysla Rucker, was also part of Ingram's family. Rucker told the court that the juror had made remarks about coffee, but no further conversation other than she "might have spoke at recess when she walked past us . . . just spoke to say hello to us." The other two witnesses confirmed Rucker's account.

The court also questioned the juror, who denied speaking to any of the witnesses. She told the court that she was speaking to a co-worker that had been seated on the bench with those witnesses. At that time, the circuit court opined that it would leave the juror on the jury, stating, "[This is] a capital murder case. I will err [on the side of] caution. I don't think she has done enough to come off the jury. Maybe. I don't think."

After a lunch break, the court returned to chambers. At that point, another individual was put under oath and testified that when Rucker and the other witnesses were leaving chambers, they were laughing. Additionally, that individual testified that the juror looked "really mad" when she left after having been questioned. It was then that the circuit court reconsidered leaving the juror in place.

The circuit court announced that it would disregard the subjective testimony about

2

the juror looking mad, but that it was concerned about the variations in the story it had received from the witnesses and the juror and also about the testimony regarding the witnesses laughing when leaving chambers after having been questioned. The juror was then removed and replaced by an alternate. It is from that decision to remove the juror that Ingram now appeals.

Ingram argues that the circuit court's removal of the juror was unjustifiable and without cause. Further, he asserts that this court should find that the removal was a "structural error" for which the impact cannot be evaluated and requires automatic reversal. The State avers that Ingram failed to argue and make the required showing of prejudice and that Ingram's argument rests on an unsound premise because a party is not entitled to a particular juror, only a fair panel. We find no error and affirm.

This court reviews a circuit court's decision to remove a juror and seat an alternate for an abuse of discretion. *See Smith v. State*, 343 Ark. 552, 39 S.W.3d 739 (2001) (citing *Lee v. State*, 340 Ark. 504, 11 S.W.3d 553 (2000)). We have also held that the appellant must demonstrate prejudice in such cases. *See id.* Whether prejudice occurred is also a matter for the sound discretion of the circuit court. *See Smith, supra* (citing *Dillard v. State*, 313 Ark. 439, 855 S.W.2d 909 (1993).

Ingram does not assert that any prejudice occurred from the circuit court's decision to seat the alternate juror. This court has been resolute in stating that it will not make a party's argument for them or raise an issue other than subject-matter jurisdiction sua sponte. *See Sullivan v. State*, 2012 Ark. 178. Instead, Ingram argues that the error alleged in the instant

SLIP OPINION

case is structural and, therefore, there should not be a prejudice analysis. However, that is not an argument that was made below. It is well settled that we do not consider issues that are raised for the first time on appeal. *See Adams v. State*, 2013 Ark. 174, ___ S.W.3d ___. Furthermore, the only case Ingram now cites to support his argument, *Vasquez v. Hillery*, 474 U.S. 254 (1986), is easily distinguishable from the instant case as the *Vasquez* case dealt with racial discrimination. This court has specifically declined to apply a presumption of prejudice, as Ingram suggests we should do pursuant to *Vasquez*, to a case that does not focus on the use of a suspect classification, such as race, in the selection of jurors. *See Kelly v. State*, 350 Ark. 238, 85 S.W.3d 893 (2002).

This court cannot possibly hold on the record and argument before it that the circuit court abused its discretion in removing the juror and seating an alternate; therefore, we affirm. In the instant case, Ingram received a sentence of life in prison. Pursuant to Arkansas Supreme Court Rule 4–3(i) (2013), the record has been reviewed for all objections, motions, and requests that were decided adversely to Ingram, and no prejudicial error has been found.

Affirmed.

BAKER and HART, JJ., concur.

**KAREN R. BAKER, Justice, concurring.** Richard Ingram appeals from an order of the Jackson County Circuit Court convicting him of capital murder. Ingram asserts that the circuit court erred in dismissing a juror without justification. Because Ingram was sentenced to life imprisonment without parole, we have jurisdiction over this appeal under Arkansas Supreme Court Rule 1–2(a)(2). I, like the majority, would affirm, though my analysis is

SLIP OPINION

different based on the facts in the record..

Ingram was accused of beating and shaking his two-year-old son, Damarrius Thomas, causing the child's death. According to the testimony of Officer Patrick Weatherford, who interviewed Ingram, Ingram admitted to "whooping" Thomas and shaking him. Dr. Stephen Erickson performed the autopsy on Thomas and found that the cause of death was multiple traumatic injuries.

Before trial, the circuit court instructed the jury as follows:

> [D]uring any recess or adjournment you must not talk to any one of the attorneys, parties, or witnesses about anything. You should not even pass the time of day with them in the courthouse or anywhere else. I say this not because I think you would discuss the case with them, but simply because it is not proper for you to be seen talking with one side or another. In other words, it is important that you be and appear to be impartial at all times during the trial of this case.

During the trial, Sheriff David Lucas informed the circuit court that he had twice seen one of the jurors speaking with Ingram's family in the hall, three of whom had been named as potential witnesses in the case. The circuit court interviewed the potential witnesses in its chambers. They told the judge that the juror had spoken to Jean Thompson's mother, and to "the other lady that was sitting there." The prospective witnesses informed the judge that the juror had asked about coffee and that one of the prospective witnesses had informed her where to get coffee. One prospective witness also stated that the juror might have spoken to them during a recess, just to say hello.

The circuit court called the juror into chambers. She stated that she had spoken to a coworker who was not a witness in the matter. She also stated that she had not spoken to



anyone else on the bench, but that she had mentioned coffee, and one of the other people on the bench had informed her where to get coffee.

The circuit court decided not to remove her from the jury at that time. The circuit court then recessed for lunch. After lunch, the circuit court spoke with Susan Cooley, assistant to the prosecuting attorney for the third district, who stated that she had seen the protential witnesses leave the circuit court's chambers and that they were laughing as they left. She also stated that she had seen the juror leaving the chambers and that she had looked "really, really mad." The circuit court at that point decided to remove the juror from the jury, over Ingram's objection, but specifically stated that he did not do so because the potential witnesses were laughing as they left his chambers or that the juror looked mad as she left. Instead, the circuit court stated that it was troubled by the variance in the stories of the potential witnesses and the juror. Hardin was replaced by an alternate juror.

We review whether a circuit court erred in removing a juror under the abuse-of-discretion standard. *Lee v. State*, 340 Ark. 504, 11 S.W.3d 553 (2000). The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Scamardo v. State*, 2013 Ark. 163, ___ S.W.3d ___.

Ingram asserts that the circuit court erred in removing the juror without justification. He contends that there was no indication from the statements of the potential witnesses and the statements of the juror that anything improper had taken place, and that chosen jurors should remain impaneled unless impropriety or bias is demonstrated.

SLIP OPINION

Despite Ingram's assertions to the contrary, the circuit court had a clear justification for removing the juror. The circuit court instructed the jurors not to speak with any of the "parties, attorneys, or witnesses." The juror did just that. The circuit court was also troubled by the variances in the statements of the juror and the potential witnesses.

Further, I do not accept Ingram's argument that a finding of bias or impropriety is necessary to remove a juror. We have said that justice ought not only to be fair, but also appear to be fair. *Langston v. Hileman*, 284 Ark. 140, 680 S.W.2d 89 (1984). In *Bradley v. State*, 320 Ark. 100, 896 S.W.2d 425 (1995),we held that the circuit court did not err in removing a juror and seating an alternate based on the appearance of impropriety. Moreover, a circuit court has discretion to excuse a juror on its own where the issue of bias may be more implied than actual. *Ruiz v. State*, 273 Ark. 94, 617 S.W.2d 6 (1981). The circuit court's instruction specifically stated that the requirement of a juror to appear impartial was among the reasons that a juror must not speak to a witness. The juror was seen speaking to a potential witness, and their statements differed on what occurred. This was sufficient to give an appearance of impropriety.

Ingram further contends that the error in excluding the juror was structural, which requires automatic reversal, as the impact cannot be evaluated, citing *Vasquez v. Hillery*, 474 U.S. 254 (1986). However, we have declined to extend the holding in *Vasquez* beyond the racially based striking of jurors. *See Kelly v. State*, 350 Ark. 238, 85 S.W.3d 893 (2002).

Here, the circuit court did not act improvidently, thoughtlessly, or without due consideration in removing the juror. Rather, the circuit court clearly considered the matter

carefully and made the decision to remove the juror because he was troubled by the inconsistency between the juror's statement and the statements of the prospective witnesses. Therefore, the circuit court did not abuse its discretion, and I would affirm.

HART, J., joins.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.