Cite as 2022 Ark. App. 234

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CR–21–429

| | | |
|---|---|---|
| DAVID RAY PARRET | | Opinion Delivered May 18, 2022 |
| | APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CR–19–2790] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE JOANNA TAYLOR, JUDGE |
| | | AFFIRMED |

**RITA W. GRUBER, Judge**

Appellant David Ray Parret was convicted by a Washington County jury of second-degree sexual assault and sentenced to ten years' imprisonment. Appellant raises two arguments on appeal: (1) that the circuit court erred in denying his pretrial motion to exclude the testimony of an Arkansas Rule of Evidence 404(b) witness and (2) that the court erred in allowing the members of the venire and jurors to wear face masks during voir dire and trial proceedings in violation of his Sixth and Fourteenth Amendment rights. We affirm.

In March 2019, Detective Autumn Holland with the Washington County Sheriff's Office interviewed sixteen-year-old CP in response to a report received by the child-abuse hotline. CP alleged that she was being sexually abused by appellant, who is her father. She recalled a night when she was in the third grade that appellant came into her bedroom while she was sleeping; he inserted one hand underneath her clothes and touched her vagina; and

he used the other hand to touch her breast over her shirt. During the investigation of CP's allegations, Detective Holland learned there had been a 2011 investigation involving sexual-abuse allegations against appellant by BW, his older daughter and CP's sister.

On October 24, 2019, the State filed a felony information charging appellant with two counts of second-degree sexual assault—one based on BW's 2011 allegations and the other on CP's 2019 allegations. An amended information was filed on May 22, 2021, which dropped the count related to BW. A second amended information was filed on May 24, 2021, which contained one count of second-degree sexual assault and specifically referenced CP as the alleged victim.

The circuit court held a pretrial hearing on May 24, 2021, at which time it denied appellant's motions to bar BW's testimony and to order that members of the venire and jurors be unmasked during voir dire and trial. The denial of these motions are the subject of appellant's arguments on appeal. A jury trial took place May 26–27, 2021. Because appellant does not challenge the sufficiency of the evidence, a detailed explanation of the testimony presented at trial is unnecessary. The jury found appellant guilty of second-degree sexual assault and sentenced him to ten years' imprisonment. The sentencing order was entered on June 1, 2021, and a timely notice of appeal was filed on June 8, 2021.

In his opening brief, appellant first argues that the circuit court erred in denying his motion to bar the testimony of a Rule 404(b) witness due to a pertinent discovery request not being received until the middle of trial. However, in reply to the State's argument that the issue is not preserved because he failed to seek relief at trial, appellant contends that he is challenging only the pretrial denial of his motion to exclude. At the pretrial hearing,

2

appellant moved to exclude the testimony of BW, whom the State intended to introduce as a Rule 404(b) witness after dropping the count related to her. Appellant first argued that BW's testimony should not be allowed under a Rule 404(b) analysis because of the eight-year time span between the victims' allegations and that the allegations were significantly different. Appellant further argued that the "biggest problem" with allowing BW to testify was that the trial was set to begin in two days, and the State had yet to disclose information from the 2011 investigation relating to BW. Specifically, appellant argued that the State had not provided a statement given by appellant in the 2011 investigation related to BW; that charges were never filed against appellant, and the detective involved in the 2011 investigation had died; and that the State had not provided BW's statement from the 2011 investigation. The State responded that BW's testimony fell within the pedophile exception to Rule 404(b) of the Arkansas Rules of Evidence. In regard to the discovery issues, the prosecutor argued that BW was not a surprise witness, and her statements were not a surprise; BW was interviewed in the 2019 case, and a detective summary of her 2011 interview and a copy of her 2019 interview had been provided to the defense. Appellant's counsel responded:

> I will admit that under the traditional 404(b) case law that our argument may be a lot different, but here we have an issue where we can't prepare for these 404(b) allegations because the State has been sitting on the recordings, specifically of our client, for two years since the case was opened. And those recordings are about the 2011 case. They are not about the 2019 case. And, so, there's really not a case that's going to meet those facts, but I think the issue here is that – – I mean, we wouldn't have this problem if they had left [BW] as a charged alleged victim. But if we want to proceed with trial in two days, now we know that they've been in possession of these recordings, the simplest – – or one of the simple, I guess, solutions is to bar [BW's] testimony. And we would certainly be moving for a continuance on the State's time if she was still a charged alleged victim. And, so, I think that the

exclusion of her testimony under 404(b), but because of these discovery issues as well, is one remedy that he Court has available apart from a continuance on the State's time due to not complying with discovery rules.

After the prosecutor indicated that there was no record of BW's statements from 2011, the court granted a short recess for the prosecutor to return to their office to see if any information from the 2011 investigation had been received. Upon returning, the prosecutor informed the court that a disc containing appellant's 2011 recorded interview had been received but not BW's statement. Thereafter the following colloquy took place:

THE COURT: [Defense Counsel], I'm going to give you all until tomorrow morning to review that disc and if you have additional motions that you want to make with regard to the disc, to anything on the disc or how it should be used or could be used, obviously, I will allow you to make those -- I would prefer that they be made before noon tomorrow so that we can address them either by telephone or an impromptu hearing during our criminal day tomorrow.

DEFENSE COUNSEL: So, Your Honor, I guess to go back to the 404(b) issue whether the Court would allow [BW] to testify, we do have our client's statement from 2011, that is good, but we're still missing, and I don't think we will ever get a copy of [BW's] recording because that has been destroyed, and we won't be able to clarify anything in the detective's summary of her statements because he is no longer with us. So I think we would still ask that the Court bar her testimony.

THE COURT: Her testimony about the allegations from the 2011 allegations?

DEFENSE COUNSEL: Yes, Your Honor.

THE COURT: Any reference to them is what you are asking for?

DEFENSE COUNSEL: Yes, Your Honor.

THE COURT: [Prosecutor]?

PROSECUTOR: Your Honor, I don't have anything to add to my argument prior. This is squarely within the pedophile exception in 404(b)

4

and there are many, many case examples where this exact testimony has been allowed and should be allowed.

THE COURT: Yeah, I am inclined to agree with the State on this and here is why: If no investigation had ever been done in 2011 we would be in the same situation that we are in now. Which is, there would be no prior statement made by [BW], with which to -- with which to try to trip her up or impeach her testimony or find prior inconsistencies or there would just be nothing there. But that doesn't mean that she wouldn't be able to testify as to what she says happened to her to show absences of mistake, to show motive, to show opportunity, to show plan or knowledge. So I'm not going to exclude [BW's] testimony altogether. She may testify as to her life experiences, just like any witness could, and the fact that there is no record of her prior disclosures does not inform my decision on that. Have I addressed that adequately?

DEFENSE COUNSEL: Yes, Your Honor.

PROSECUTOR: Yes, Your Honor.

DEFENSE COUNSEL: So, I would ask the Court for a moment to confer with co-counsel --

THE COURT: Sure.

DEFENSE COUNSEL: -- on the issue of asking for a continuance at this time.

THE COURT: Okay. Go ahead.

DEFENSE COUNSEL: Your Honor, barring anything that comes up in reviewing the disc tomorrow, I do believe we have prepared that [BW] would probably be allowed to testify, so we will be prepared to go forward with that, unless there's anything new that comes up here.

The jury trial began on May 26. During the middle of the second day of trial and prior to BW's testimony, the State informed the court that an email had just been received from the Arkansas State Police Crimes Against Children Division (CACD) that included a report from the 2011 investigation. The State asserted that until receiving the email that it

5

was their understanding that they did not have the report and it could not be located, which was what had been previously reported to the court and the defense. After a short recess to allow the parties to review the report, the following colloquy occurred:

DEFENSE COUNSEL: Your Honor, I'm not sure. I'm still processing. I've discussed this with Mr. Parret and [co-counsel]. I think this -- this is a 24-page report that says Arkansas State Police on the top of it, and it is pertaining to a witness who is about to come in here and testify and her dad might go to prison. There's a witness in here that we've never seen his name before and he's a potential impeachment witness for [BW]. And we're getting it the day -- just hours before she's going to testify. There's no contact information for him. I need an investigator to track him down or try to track him down, if I wanted to use him to impeach [BW]. And so, I don't know if I want to ask for a mistrial trial, but this is not how cases should be tried. This report knowledge of -- I understand the State thought this didn't exist, but it's Arkansas State Police. Knowledge of this report is imputed to the Prosecuting Attorney's Office. And this is not the first time in this case that this has happened. So, what [co-counsel] and Mr. Parret and I have discussed is -- I don't know if I want to move for a mistrial. I don't know if I want to come back here and go through all of this again, but I also don't want to come back here in three years and have another attorney ask me why I went ahead and tried a case without contacting a potential impeachment witness. And my answer will be, "Well, I thought the trial was going okay." I guess that's what I have to say, Your Honor. I don't want to ask for a mistrial. I think the only other option is to see what [BW's] testimony is and if she doesn't testify to what Eli Stokes claims she said to him back in 2011 then we just have to mis-try the case.

THE COURT: So what I'm hearing you say is that you are not moving for a mistrial at this point, that you want us to proceed with [BW's] testimony and then, depending on her testimony, if you would need to call Eli Stokes as a witness, then you would move for a mistrial.

DEFENSE COUNSEL: Your Honor, that's my position. But I just want to make it clear that we can't try cases like this where we're getting state police reports, multiple reports.

6

THE COURT:           I can only rule on the motions that are before me, Mr. Lammers.

DEFENSE COUNSEL: That's my position, Your Honor.

THE COURT:           Thank you.

After this colloquy, the State called BW to testify.

Appellant argues that the circuit court erred in denying defense counsel's pretrial motion to bar BW's testimony when the State "failed to disclose vital discovery until the second day of trial." He further argues that although he submitted a request a week before trial for all Rule 404(b) evidence the State intended to use, he was presented with this crucial discovery during the middle of the second day of trial and had only fifteen minutes to review it. He states that the disclosure was not sufficient to allow him to make beneficial use of the information.

The State responds that appellant's argument is not preserved because an argument that BW should not be allowed to testify was not made at the trial but occurred pretrial when appellant argued that the court should bar her testimony because the State had failed to disclose her 2011 statement. The State asserts that when the CACD report became available during trial, appellant did not argue that the court should bar BW's testimony because of its late disclosure. However, in his reply brief, appellant argues that "non-disclosure of discovery before trial is the specific point on appeal" and explains that the "mid-trial disclosure of said discovery is presented . . . to relay the full narrative of trial proceedings." Alternatively, the State contends that appellant's argument lacks merit.

Clearly, the record fails to establish that appellant made an objection or requested any relief as a result of the midtrial disclosure of BW's 2011 statement. However, as appellant

contends in his reply brief, he is challenging the circuit court's denial of his request to exclude BW's testimony on the basis of the State's failure to disclose the 2011 interview before trial.

The standard of review for imposing sanctions for discovery violations is whether there has been an abuse of discretion. *Hicks v. State*, 340 Ark. 605, 12 S.W.3d 219 (2000). It is within the circuit court's discretion which sanction, if any, to employ. *Barrow v. State*, 2010 Ark. App. 589, 377 S.W.3d 481. Rule 19.7(a) of the Arkansas Rules of Criminal Procedure provides that in response to a violation of a discovery rule, the circuit court may permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems proper under the circumstances. Our supreme court has said that "the key in determining if a reversible discovery violation exists is whether the appellant was prejudiced by the prosecutor's failure to disclose." *Bray v. State*, 322 Ark. 178, 180, 908 S.W.2d 88, 89 (1995). In order to show prejudice, an appellant must demonstrate a reasonable probability that the result would have been different had the information been disclosed. *E.g.*, *Lee v. State*, 340 Ark. 504, 11 S.W.3d 553 (2000). Under these standards, appellant has the burden to show that the omission was sufficient to undermine the confidence in the outcome of the trial. Id.

Rule 17.3 of the Arkansas Rules of Criminal Procedure requires the prosecuting attorney to "use diligent, good faith efforts to obtain material in the possession of other governmental personnel which would be discoverable if in the possession or control of the prosecuting attorney, upon timely request and designation of material or information by

defense counsel." At the time of the pretrial hearing, the report related to the 2011 investigation could not be found. As acknowledged by the defense, there was no indication that it was still in existence; it was thought to have been destroyed; and the detective involved in the 2011 investigation had died. At the hearing, defense counsel indicated there was no "ill intent" on the part of the State. Defense counsel had a detective summary of the 2011 statement, and BW was not a surprise witness. In denying the motion to exclude, the circuit court reasoned that if no investigation had been done in 2011, BW would be allowed to testify, but there would be no prior statement with which to impeach her. The court stated that BW would be able to testify to her life experiences and the fact that there was no record of her prior disclosure did not affect the court's decision.

Even though a discovery violation may have occurred, appellant has failed to show the prejudice necessary to reverse. *Barrow*, 2010 Ark. App. 589, 377 S.W.3d 481. Appellant asserts he was prejudiced because he was unable to adequately prepare for BW's testimony; BW was a vital witness whose testimony was used to show appellant's alleged proclivity towards the illegal acts for which he was charged; and BW's testimony enhanced the State's case because there was no direct physical evidence and consisted of the testimony of the victim only.

Appellant makes no argument as to how the contents of the statement would have been used had it been provided earlier. Appellant received during trial what he requested before trial. During the colloquy before BW's testimony, appellant made no mention of how the newly discovered statement differed from what was previously known except that it identified a possible witness who could be used to impeach BW. Although appellant's

9

counsel reserved the right to seek a mistrial depending on BW's testimony, counsel made no objections or motions with respect to BW's testimony. It is worth noting that the defense used the 2011 statement to impeach BW's testimony. Appellant has failed to demonstrate prejudice. We hold that the circuit court did not abuse its discretion, and in the absence of prejudice, we affirm the circuit court's refusal to exclude BW's testimony.

For his second point on appeal, appellant argues that the circuit court erred in allowing the jurors the choice to wear face masks during voir dire and trial proceedings in violation of his Sixth and Fourteenth Amendment rights under the United States Constitution. During the pretrial hearing, defense counsel stated that it was his understanding that jurors would not have to wear masks. The court responded that the jurors would be socially distanced and would be allowed to do what they are comfortable with but stated that it was not going to hold anyone in contempt or disqualify anyone for not wearing a mask. Defense counsel then stated as follows:

> Just for purposes of the record, I think there may be an issue if we're not able to observe the jurors and whether they are -- you know, what their attitudes are, if they're listening, if they -- how their faces are if the faces are blocked, if they are reacting to us, that could negatively our ability to represent Mr. Parret. I just want to put that on the record in case this case comes back on appeal. I think that may be an issue.

The prosecutor responded that they were proceeding by the rules set by the supreme court, and it would be for supreme court to decide whether their rules were incorrect. The court agreed and denied the motion, stating, in part, that everyone involved was working under the same "disability" but that they had to operate within the framework provided.

The State responds that appellant's argument is not preserved because he failed to raise a constitutional argument. We agree that appellant has failed to preserve the argument.

10

In criminal cases, issues raised, including constitutional issues, must be presented to the circuit court to preserve them for appeal; the circuit court must have the benefit of the development of the law by the parties to adequately rule on the issues. *Gooch v. State*, 2015 Ark. 227, 463 S.W.3d 296. We will not consider an argument raised for the first time on appeal or that is fully developed for the first time on appeal. *Id*. Furthermore, a party cannot change his or her grounds for an objection or motion on appeal but is bound by the scope of arguments made at trial. Id.

Even if appellant had preserved this argument on appeal, we would affirm on the basis of this court's recent decision in *Cooper v. State*, 2022 Ark. App. 25, 638 S.W.3d 872, where a similar argument was raised. In Cooper, we affirmed the circuit court's decision requiring jurors to wear face masks, holding that appellant's argument was without merit in light of our supreme court's per curiam opinion that was in effect at the time of appellant's trial. *Id*. (citing *In Re Response to the COVID-19 Pandemic*, 2020 Ark. 249 (per curiam)).

Affirmed.

WHITEAKER and HIXSON, JJ., agree.

*Nicole Gillum, Esquire, PLLC*, by: *Nicole C. Gillum*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.