Cite as 2022 Ark. App. 453

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CR-22-50

| | | |
|---|---|---|
| TERRANCE HUGHES | | Opinion Delivered November 9, 2022 |
| | APPELLANT | |
| | | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. 30CR-19-421] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | |
| | | HONORABLE CHRIS E WILLIAMS, JUDGE |
| | | AFFIRMED |

**RITA W. GRUBER, Judge**

A Hot Spring County jury convicted appellant Terrance Hughes of first-degree murder and aggravated residential burglary and found that the felony offense of first-degree murder was committed in the presence of a child. He was sentenced to an aggregate of ninety years' imprisonment. On appeal, appellant argues that the circuit court abused its discretion in denying a motion for continuance based on an alleged discovery violation by the State and by permitting alleged hearsay testimony in violation of the Arkansas Rules of Evidence and the Confrontation Clause. We affirm.

On November 27, 2019, six men—appellant, Stavaris Balentine, Dale Buckley, Jr., Charles George, Korwan Keith, and Duante Weaver—planned to rob Brody Gearhart, a marijuana dealer. Weaver knocked on Gearhart's back door while appellant and the others

entered through the front door, at which point appellant shot Gearhart. Hannah Oliver, Gearhart's girlfriend, and their young children who were two years old and one month old, were home at the time of the incident.

The State charged appellant with capital murder on December 2, 2019. On January 9, 2020, the State amended the information to charge appellant with first-degree murder under Ark. Code Ann. § 5-10-102 (Repl. 2021) and aggravated residential burglary under Ark. Code Ann. § 5-4-702 (Supp. 2021). The State also sought enhancement for engaging in violent criminal activity under Ark. Code Ann. § 5-74-108 (Repl. 2016) and committing a felony in the presence of a child under Ark. Code Ann. § 5-4-702. Appellant filed a motion for discovery on January 13 and a motion for disclosure of the codefendants' statements on December 11 to which the State filed a response that it would provide any such statements. On July 8, 2021, the morning the jury trial began, appellant learned that on the previous day, codefendant Stavaris Balentine had reached a plea agreement with the State in exchange for his testimony. Consequently, appellant moved for a continuance, which was denied.

The jury convicted appellant of first-degree murder and aggravated residential burglary and found that he had committed the felony offense of first-degree murder in the presence of a child. He was sentenced to consecutive terms of forty, forty, and ten years' imprisonment, respectively. Appellant filed a timely notice of appeal.

I. *Denial of Motion for Continuance*

Arkansas Rule of Criminal Procedure 27.3 provides that "the court shall grant a continuance only upon a showing of good cause and only for so long as is necessary taking

2

into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case." Ark. R. Crim. P. 27.3. The denial of a motion for continuance is within the sound discretion of the circuit court and will not be disturbed absent an abuse of that discretion. *Beard v. State*, 2022 Ark. 7, at 4, 636 S.W.3d 772, 774. An appellant must not only demonstrate that the circuit court abused its discretion by denying the motion for a continuance but also show prejudice that amounts to a denial of justice. *Id.*

Our supreme court has held that it is reversible error when a prosecutor fails to comply with a defendant's timely request for disclosure of information when that failure results in prejudice to that defendant. *Lee v. State*, 340 Ark. 504, 11 S.W.3d 553 (2000). The information must be disclosed by the prosecutor in sufficient time to permit the defense to make beneficial use of it. *Id.* When the prosecutor fails to provide information, the burden is on the defendant to show that the omission was sufficient to undermine confidence in the outcome of the trial. *Id.*

Appellant argues that the State failed to comply with Ark. R. Crim. P. 17.1(a)(ii) and (d), which provides in pertinent part:

> (a) Subject to the provisions of Rules 17.5 and 19.4, the prosecuting attorney shall disclose to defense counsel, upon timely request, the following material and information which is or may come within the possession, control, or knowledge of the prosecuting attorney:
>
> . . . .
>
> (ii) any written or recorded statements and the substance of any oral statements made by the defendant or a codefendant;

. . . .

(d) Subject to the provisions of Rule 19.4, the prosecuting attorney shall, promptly upon discovering the matter, disclose to defense counsel any material or information within his knowledge, possession, or control, which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce the punishment therefor.

Ark. R. Crim. P. 17.1(a)(ii), (d). Appellant asserts that Rule 17.1(a)(ii) and (d) required the State to immediately disclose the plea agreement and related statements made to the State by Balentine and that its failure to do so was in violation of the Arkansas Rules of Criminal Procedure. Appellant contends that he requested a continuance to prepare for Balentine's testimony and make an opening statement addressing the new evidence. He argues that the circuit court abused its discretion in denying the motion as "untimely" because he made the motion as soon as possible after learning of the plea agreement. Finally, appellant contends he was prejudiced by his inability to fully address Balentine's anticipated testimony in his opening statement and to prepare for Balentine's cross-examination.

On the morning of the first day of trial, appellant became aware that the State had reached a conditional plea agreement with Balentine the previous day. In moving for a continuance, appellant argued that the defense had a right to the substance of the statements made by Balentine and "certainly anything that would be in conflict with what he's already said." Counsel stated that had he known about the deal the day before, he could have prepared for the witness during the eight hours he slept, which prejudiced his ability to prepare. The State indicated that Balentine's oral statement made at the time of the plea agreement did not deviate from the written statement previously provided to the defense.

4

The circuit court never made a ruling as to whether a violation of Rule 17.1 occurred. However, the circuit court found that appellant was not prejudiced by the plea agreement being disclosed on the day of trial. Moreover, the court instructed the State not to deviate from Balentine's original written statement in its opening statement to the jury, as requested by the defense.

After voir dire and just before opening statements, defense counsel asked if opening statements could be made after lunch in order to prepare for Balentine's testimony. The State responded that it would wait to call Balentine the following day and would not refer to his statement during opening statement. Although defense counsel indicated that Balentine's statement could not be ignored during opening statement, the court stated that after opening statement, "we'll deal with the witnesses then. At that point you can raise your motion then."

At the hearing, appellant argued that he should have been informed immediately of the plea agreement because he would have had the night before trial to prepare for Balentine's testimony. In addition to the inability to prepare, appellant also argues on appeal that he was prejudiced by the importance of Balentine's testimony. Balentine testified that he saw appellant with a gun prior to the homicide; he saw appellant go into the home, heard a gunshot, and everyone else ran in; and appellant told Balentine that he shot someone.

As for appellant's argument that the circuit abused its discretion in saying that the motion was untimely, appellant is misguided. Our reading of the circuit court's ruling was that the motion was premature because the State indicated that Balentine's statement had

5

not differed in any way from what had been previously disclosed. Insofar as appellant argues that he was prejudiced by the inability to address Balentine's oral statement in his opening statement, the court limited the State from delving into anything that may have differed. Further, any alleged prejudice in being unable to adequately prepare for cross-examination is also without merit. Defense counsel argued that had the plea agreement been disclosed when it was made the day before trial, he would have had the night to prepare for cross-examination. The State agreed to wait and call Balentine on the second day of trial; thus, defense counsel had the night to prepare for cross-examination as he originally asserted he would have done. It should also be noted there was never any evidence presented or objection made that Balentine's original statement differed in any way from any oral statement made during his plea negotiations.

In light of these circumstances, we cannot say that the circuit court abused its discretion in denying appellant's motion for continuance.

## II. *Hearsay/Confrontation-Clause Objection*

Appellant argues that the circuit court abused its discretion when it permitted the testimony of Officer Jim Bailey about statements made to him by Hannah Oliver at the crime scene regarding the identity of the shooter. When Officer Bailey was asked whether Oliver said anything about who had shot Gearhart, appellant objected on grounds of hearsay and the Confrontation Clause.[1] The circuit court agreed that it was hearsay unless an exception

---

[1]Officer Bailey ultimately testified that Oliver said she recognized the shooter and that "they knew him as T or Terrance."

6

applied; at which point, the State argued that it was not hearsay. The State argued, "They have said that she has not said those words to anybody at any time until she got to the police station. She did say those words. And whether they're true or not, we're not offering them for the truth. She's identified him other places. But she did say those words at the scene." Alternatively, the State argued that the statement was an excited utterance.

Ultimately, the circuit court found that the statement was hearsay and allowed it in as an excited utterance but required the State to lay a foundation of whether or not it was an excited utterance. Oliver was recalled by the State during Bailey's testimony.

As a general rule, hearsay is not admissible evidence. *See* Ark. R. Evid. 802. There are, however, certain out-of-court statements that are not considered hearsay. Rule 801(d)(1) sets out the following:

> *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (i) inconsistent with his testimony and, if offered in a criminal proceeding, was given under oath and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (iii) one of identification of a person made after perceiving him[.]

A circuit court's evidentiary rulings are reviewed on appeal under an abuse-of-discretion standard. *Tarver v. State*, 2018 Ark. 202, 547 S.W.3d 689. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Jefferson v. State*, 2017 Ark. App. 536, 532 S.W.3d 593. Additionally, unless an appellant can

demonstrate prejudice from an evidentiary ruling, the appellate court will not reverse, as prejudice is not presumed. *Taffner v. State*, 2018 Ark. 99, 541 S.W.3d 430.

From the outset of the trial, appellant sought to undermine Oliver's credibility by implying that she fabricated her identification of appellant as the shooter. For example, during opening statement, appellant's counsel pointed out that Oliver said she did not know who shot Gearhart on the 911 call and on Officer Ledbetter's body-cam footage, but she identified appellant at the police station later that evening in a photo lineup. Counsel pointed out that she told Officer Ledbetter she had her head down. Appellant continued to test the veracity of Oliver's identification of appellant during her cross-examination. Appellant questioned that Oliver told the 911 operator that she did not know who shot Gearhart, and Oliver explained that she did so because he was dying in front of her and she was trying to "hurry up." Counsel also had her admit that she told Officer Ledbetter that she did not know who shot Gearhart, which called into question that she had stated her head was down, but she was later able to pick appellant out of a photo lineup because she recognized his eyes. When counsel asked if she understood that there was a problem that she did not identify the shooter the first two times she was asked, Oliver responded affirmatively and stated that she was in shock. Counsel further inquired, "When did you become positive, assuming that this is correct and you've said these things, when did you go from I have no idea who did it to maybe it's him?" Oliver responded that she knew the whole time but did not say because she thought Gearhart would be able to speak for her. Counsel proceeded to ask her if she unintentionally lied, to which Oliver explained that there was so much going

on, her kids were crying, and she wanted Gearhart to be able to speak for himself. Further, counsel stated, "If you're lying right now you're lying so you get a result because you have come to the decision that it was Terrance[.]"

In light of the foregoing, it is apparent that appellant was trying to imply that Oliver fabricated her identification. Oliver testified at trial and was subject to cross-examination concerning the statement made to Officer Bailey. Considering these facts, Officer Bailey's testimony about the statement Oliver made at the scene was not hearsay under Ark. R. Evid. 801(d)(1)(ii). Oliver's statement was consistent with her testimony that appellant was the shooter and was offered to rebut the implication of fabrication; therefore, the admission of Officer Bailey's testimony about Oliver's statement was not in error. *See Cooper v. State*, 317 Ark. 485, 879 S.W.2d 405 (1994) (affirming the admission of a prior consistent statement under Ark. R. Evid 801(d)(1)(ii) where declarant was subject to cross-examination concerning the statement and defense counsel cast doubt on the veracity of the declarant's allegations). Although the circuit court erred in ruling that the statement was hearsay, albeit admissible as an excited utterance, evidentiary rulings may be affirmed when the circuit court reached the right result, even if its reason was incorrect. *Keesee v. State*, 2022 Ark. 68, at 13, 641 S.W.3d 628, 639.

In addition to arguing that it was improper hearsay evidence, appellant argues that the admission of Bailey's testimony was a violation of the Confrontation Clause. A defendant's right to confront the witnesses against him is found in the Sixth Amendment to the United States Constitution and in article 2, section 10 of the Arkansas Constitution.

9

Specifically, the Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.

Appellant contends that this issue turns on whether the statements made by Oliver to Bailey at the crime scene were testimonial. Testimonial hearsay statements are generally inadmissible unless the declarant is unavailable and the defendant has had the opportunity to cross-examine the declarant regarding the challenged statement. *Crawford v. Washington*, 541 U.S. 36 (2004). However, the right of confrontation is not violated where testimonial hearsay is admitted against the defendant, and the declarant is present at trial and available as a witness. *See Toombs v. State*, 2015 Ark. App. 71, at 8 (citing *Crawford*, 541 U.S. at 59). If the witness is available in court to cross-examine, then the Confrontation Clause is satisfied. *Id.* (citing *Davis v. State*, 2011 Ark. 373).

Here, Oliver testified at trial and was subject to cross-examination regarding her statement. Therefore, the Confrontation Clause is satisfied under these facts. In conclusion, the circuit court's admission of Bailey's testimony was not hearsay and did not violate the Confrontation Clause.

Affirmed.

VIRDEN and VAUGHT, JJ., agree.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.